AMERICAN CANCER SOCIETY, INC., ET AL., APPELLEES, *v.* CITY OF DAYTON, APPELLANT.

(No. 2212—Decided December 16, 1952.)

*Messrs. Taft, Stettinius & Hollister,* for appellees.

*Mr. Herbert S. Beane,* city attorney, and *Mr. M. J. Gilbert,* for appellant.

WISEMAN, J.  This is an appeal on questions of law from a judgment of the Common Pleas Court of Montgomery County, which held to be invalid an ordinance of the city of Dayton, which was passed for the purpose of regulating solicitation of funds.

The American Cancer Society, Inc., instituted the action in the Common Pleas Court of Montgomery County to enjoin the enforcement of Sections 638-4 and 638-5 of the ordinances of the city of Dayton on the ground that such ordinance is in violation of the provisions of the Ohio Constitution and the United States Constitution.  After hearing, the court entered judgment that the ordinance in question was void, being contrary to the provisions of the Ohio Constitution and the United States Constitution, and enjoined the enforcement thereof.  From that judgment, the city of Dayton took this appeal.

No bill of exceptions has been filed.  The matter is presented to this court on the pleadings, a separate findings of fact and conclusions of law, and the judgment.  The questions presented are properly exemplified by the record.

Omitting references to the record, the first seven assignments of error filed by the city of Dayton are that the court erred in holding:

"1. That the regulation of fund-raising campaigns is a proprietary function.

"2. That 'the convenience of the public is subservient to the constitutional rights of citizens of the United States.'

"3. That the ordinance is arbitrary and discriminatory.

"4. That the ordinance unlawfully delegates authority to the Solicitations Advisory Board.

"5. That sections 638-4 and 638-5 are 'in no way related to public welfare.'

"6. That the refusal of the permit is an illegal denial of plaintiff's corporate franchise right.

"7. * * * that sections 638-4 and 638-5 specifically, and therefore ordinance No. 15689 in its entirety, are unconstitutional."

The city also assigned as error that the court erred:

"8. In ignoring an additional and sufficient ground for the action of the city Commission.

"9. In voiding said ordinance and permanently enjoining its enforcement."

Appellant, city of Dayton, contends that the court erred in finding that the regulation of fund-raising campaigns is a proprietary function. In conclusions of law Nos. 8 and 9, unfortunate language is used which seems to indicate that the court was of the opinion that the power to regulate "the solicitation of funds for charity is not a governmental function, but is a non-governmental proprietary function," and that, in the regulation of which, the city is unable to make use of the police power. With this conclusion we do not agree.

Clearly, this legislation lies in the field of the police power, and is not a proprietary function. 8 Ohio Jurisprudence, 333, Section 229. While the contention of the appellant is supported with regard to this assignment of error, it is not determinative of the question presented. If the judgment can be supported otherwise, it is our duty to do so. In no sense whatever can it be said that conclusions of law Nos. 8 and 9 are prejudicial.

The words of the trial court complained of in assignment of error No. 2 are not found in the separate findings or judgment, but in the prior written opinion of the trial court, which is not a part of the record. We do not find this assignment well made.

Assignments of error Nos. 3 and 4 are considered together and raise the principal question for determination. The conclusions of law on which this contention is based are as follows:

"3. That the ordinance is unconstitutional in that it confers on the solicitations advisory board arbitrary and discriminatory right to reject a permit to any organization based upon the said board's belief that an object, purpose or movement in a field is adequately covered or entirely covered, and if this fact is found after investigation, the power is given to discriminate as to who may solicit funds for any charitable group or organization."

"5. That said ordinance is unconstitutional in that it unlawfully delegates authority to the solicitations advisory board in that the standards under which the said administrative board is to be guided are not reasonably related to public welfare, health, safety or protection of the public."

"10. That the ordinance is discriminatory and arbitrary in that, by its terms, it may be used to discriminate against any other organization or individual without reasonable rules or regulations which would be equally applicable to all those who seek to engage in charitable work or in the solicitation of funds for their desired purpose."

A brief recitation of the factual situation which developed, as disclosed in the findings of fact, is necessary for a full appreciation of the questions presented. The essential facts may be stated as follows:

The American Cancer Society, Inc., is a membership corporation, not for profit, incorporated under the

laws of the state of New York, and the Ohio Division, American Cancer Society, Inc., is a corporation, not for profit, organized under the laws of the state of Ohio. The city of Dayton has a commission-manager form of municipal government. The Ohio division of the society had been functioning in Ohio several years prior to 1950, and it has an organized unit in Montgomery county, operating in the city of Dayton and Montgomery county; that through the local units the general program of the state and national organizations is implemented; that the local unit functions as such under the direction of a local executive committee, maintaining a local office under the direction of a salaried executive secretary. The corporate franchise of the Ohio division of the society provides:

''Collect and disseminate information concerning the symptoms, diagnosis, treatment and prevention of cancer; to investigate the conditions under which cancer is found and to compile statistics in regard thereto; to co-operate with and promote the work of the American Cancer Society, Inc., to solicit, collect, receive, hold, invest, reinvest, distribute and disburse donations, subscriptions, gifts, bequests and other funds for the purposes of this corporation; to aid, in co-operation with state and local medical societies, departments of health, cancer commissions, and other approved and interested health organizations, in the promotion of cancer programs and projects; to establish, maintain and administer units, branches, committees, field armies, and carry on any other activities, within the state of Ohio, to effect and carry out the purposes of this corporation; and the doing of any and all things necessary or incident thereto.''

The franchise of the parent organization issued by the state of New York contains similar powers. For several years prior to 1950, the local unit had been conducting in Dayton and Montgomery county, an

annual, combined educational membership and funds solicitation campaign in the month of April, simultaneously with like campaigns throughout the nation; that since 1946, such local campaigns have been conducted under a permit issued to the local unit by the city of Dayton under the ordinance in question; that in 1950, the local membership of said society consisted of approximately four thousand members; that the funds collected and retained for local use were placed in a local bank; that the accounts have been audited; that at no time during its operation has there been any complaint charging it with fraudulent acts or mishandling of funds; that the funds collected were allocated and distributed according to a definite plan and policy, a certain percentage being retained by the local unit, a portion being distributed to the state organization, and a portion to the national organization; that on February 2, 1950, an application was made by the society for a permit to conduct its annual funds campaign, which was duly prepared, filed and acted upon by the solicitations advisory board, which on February 17, 1950, passed a resolution rejecting said application on the ground that the permit granted to it for 1949 was conditioned upon the society becoming a member of the Dayton community chest organization, and that the Dayton community chest had collected $25,000, which was available for use in a campaign against cancer; that from this ruling an appeal was taken to the city commission, as provided in said ordinance, which passed a resolution as follows:

"Whereas, the Montgomery county unit of the American Cancer Society, Inc., heretofore appealed, under the city ordinance granting such appeals, from the recommendation of the solicitations advisory board against the issuance of a permit to conduct a public campaign in the city of Dayton between April 15 and April 30, 1950; and

"Whereas, the commission having heard the various claims made on behalf of the said society in support of its application, finds that there has been allocated from funds publicly solicited in this community and is presently available to the society for the year 1950, the sum of twenty-five thousand dollars ($25,000), and that, prior to the said application, a permit had been issued for a campaign in behalf of the Miami Valley Hospital in this city to be conducted within the same period; and

"Whereas, the commission therefore does not and cannot find that the object of the proposed cancer drive is not already adequately covered or that it will not be an unwarranted burden upon the persons to be solicited, or that it will not hinder the activity of any other organization to whom a permit has already been granted, or that such solicitation would not be incompatible with the public welfare; now, therefore,

"Be it resolved by the commission of the city of Dayton:

"Section 1. That, though the commission fully recognizes the constructive nature of the work of the said organization and is in sympathy with it, the application of the said Montgomery county unit of the American Cancer Society, Inc., referred to above, be and the same hereby is denied."

The court found that during the year 1950 the solicitations advisory board approved thirty-seven applications for permits for the solicitation of funds in the city of Dayton, by various organizations. The court further found that at the time the application for permit was refused, the plaintiff-organization was the sole organization in the city of Dayton devoting its time exclusively to combating cancer and maintaining an office and organization for such purpose; that there was at said time no organization in the Dayton community chest or any organization allied with the

Dayton community chest engaged in such work. The court further found that the society could not have used the funds indicated as being in the community chest without becoming a member thereof, and that the administration of such funds by the society would have been under the supervision of the community chest. The court found that the program and work of the society was for the public benefit, public welfare and health, and that the said program was not injurious to the public in the city of Dayton; and that the solicitation of funds was not attended by fraud or injury to the public of said city.

We now set forth the several applicable sections of the ordinance which were in full force and effect at the time the application for permit was made and refused. Section 638 provides as follows:

"No person, organization, society, association or corporation, and no agent, member, or representative thereof, shall solicit money, donations, property, or financial assistance of any kind, sell or offer to sell any article, service, publication, advertisement, ticket or subscription, on the direct or implied plea that such solicitation or sale is for charitable, educational, civic, patriotic, religious, or philanthropic purposes, on the streets, in office or business buildings, by house to house canvass, in any public place, by telephone or by mail, or in any other way in the city of Dayton, unless the organization making the solicitation, sale, or offer shall possess a permit issued under the regulations as in this ordinance set forth."

By related sections, certain transactions and promotion plans are exempted from the provisions of the ordinance, which are not material here.

Sections 638-3, 638-4 and 638-5 provide as follows:

"Section 638-3. Solicitations advisory board. There is hereby created a solicitations advisory board which shall be composed of such number of members

as may be appointed by the city commission. The members of such board shall be appointed for a term of two years, shall serve without remuneration for their services as such members and need not be residents of the city of Dayton.

"Section 638-4. Consideration of applications. All applications received by the director of public welfare as aforesaid shall be turned over to the solicitations advisory board, which shall take into consideration the following: As to whether or not it believes that the applicant is proposing to serve an object, purpose, or movement in a field not already covered, or, if so, not adequately covered, representing a public charity or a charitable, philanthropic, or educational organization or enterprise, or other educational purpose, and that same will be beneficial to the people of the city of Dayton, and will not be an undue or unwarranted burden upon the class of persons who will be solicited to contribute thereto, and will not interfere with or hinder or prevent the activity of any person, persons, or organization to whom permit hereunder has already been granted; that the cause for which the solicitation is to be made is in fact charitable, educational, civic, patriotic, religious, or philanthropic; that at least seventy-five per cent of the gross proceeds of such sales promotion or solicitation will be used for such purpose; that such solicitation or sales promotion is not promoted or conducted primarily for the private profit of its promoters; and that it is not incompatible with the public welfare. After investigation, said board shall make recommendation to the city manager as to whether or not a permit should be issued."

"Section 638-5. Issuance of permit. Upon receipt of such application with recommendation that a permit be granted, together with bond as required by this ordinance, the city manager shall issue a permit there-

for. Such permit shall not be issued for a period longer than thirty days, and shall become null and void upon conviction of the applicant or any officer, agent, or representative thereof of the violation of any provision of this ordinance. Such permit shall specify the method of solicitation, or raising of funds, the purpose thereof, the method of distribution, and the number of solicitors or representatives to be engaged in the actual field work or solicitation thereof, and it shall be unlawful for any person to act as such solicitor or representative without having on his person a certified copy of such permit or such modification thereof as the city manager may adopt, but same must be under the signature of the city manager or his secretary.''

Section 641 provides the penalty for a violation of the provisions of the ordinance.

The trial court found that the ordinance was arbitrary, discriminatory, and that it unlawfully delegates authority; and that, therefore, the ordinance was unconstitutional and unenforcible.

Is the ordinance arbitrary or discriminatory and, therefore, unconstitutional? It is well established that every reasonable presumption must be indulged in favor of its constitutionality. The presumption of constitutionality continues until the invalidity of the ordinance clearly appears. Every reasonable intendment is to be made in favor of the legislative body which enacted the ordinance. 8 Ohio Jurisprudence, 154, 166, Sections 58 and 64.

A close analysis of the provisions of the ordinance is required. All applications for permits are turned over to the solicitations advisory board, which must take into consideration ''as to whether or not it believes that the applicant is proposing to serve an object, purpose, or movement in a field not already covered,'' etc. Herein is found broad discretionary power in determining the objective and purpose of the

solicitation, and in determining whether the field is already covered. But the ordinance does not stop at this point. It gives even more power to the solicitations advisory board by providing that it may consider whether the field is or is not "adequately covered." These provisions do not attempt to regulate the time, place and manner of conducting a campaign for funds which may serve a worthy purpose. The power conferred permits the solicitations advisory board to prohibit the solicitation for a worthy cause, which is the factual situation in the instant case. Again, the ordinance requires the board to consider whether the solicitation "will be beneficial to the people of the city of Dayton and will not be an undue or unwarranted burden upon the class of persons who will be solicited to contribute thereto."

One of the most marked characteristics of the modern age is the growth and support of many and varied charitable and philanthropic organizations and movements. Certain of these movements may not serve the people of the city of Dayton, although many of its citizens may believe the organization worthy of support. Whether a cause is beneficial to the people of the city of Dayton is certainly an improper test. People differ as to the worthiness of many such organizations, and the members of the board likewise may differ as to such matters and may take a position adverse to the opinion of a considerable number of the people they serve. How can the board determine the extent of the burden to be borne by the contributor? Who can measure the heart throbs and the spiritual benefit derived by the giver who voluntarily contributes to some worthy charitable, philanthropic or religious cause? Who can measure the burden, if indeed it was a burden, borne by the woman who gave the "widow's mite"? These provisions of the ordinance confer upon the board arbitrary power.

In the instant case, the board, in the exercise of the powers conferred, refused the permit on the ground that the permit granted to the society the prior year was conditioned upon the society becoming a member of the community chest, and that the community chest had collected $25,000 which was available for use in a campaign against cancer. This action of the board reveals the defect in the ordinance. The board concluded that since $25,000 was available through the community chest, solicitation by the society should not be granted, although all other requirements were met by the society, and the objective concededly to be most worthy. On appeal, the action of the city commission in refusing the permit was based partly on the fact that the community chest had available the sum of $25,000. Several additional reasons are assigned by the commission for the refusal of the permit. First, that a permit had been issued to the Miami Valley Hospital to conduct a financial campaign during the same period of time. One purpose of the ordinance, which is a worthy objective, is to avoid conflict in time with regard to solicitations by major organizations. It does not appear, and we cannot say, that the permit would have been rejected on this ground alone. Second, the city commission could not find that the field was not already adequately covered and that it would not be an unwarranted burden upon the persons to be solicited. This general finding by the city commission evidently refers to the fact that the community chest had conducted its campaign and had available $25,000 for the fight against cancer; that by reason thereof, the field was covered; and that to allow solicitation by the society, as it had done annually, would have been an unwarranted burden on the contributors. In all such solicitations, there is no compulsory giving; all such giving is wholly voluntary. For the city commission to determine that the field

was adequately covered, and that such solicitation would be an unwarranted burden, was an exercise of arbitrary power and a discrimination against the society. If such action is held to be valid, the board or the city commission, in the exercise of the same power conferred, may some day decide that a permit to conduct a city-wide financial campaign by the church federation should be refused on the ground that the local church congregations had adequately covered the field, and that an additional campaign would be an unwarranted burden on the religious-minded persons in the city of Dayton.

The trial court held that the provisions of the ordinance violated provisions of the Ohio and Federal Constitutions. Section 1 of the Fourteenth Amendment to the United States Constitution, in part, provides:

''No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.''

In the Ohio Constitution, Section 1, Article I, protects the liberty of the individual; Section 2, Article I, guarantees equal protection; Section 11, Article I, guarantees freedom of speech and the press; and Section 3, Article XVIII, confers on municipalities all powers of local self-government.

We find no reported case in Ohio touching this precise question. However, in 128 A. L. R., 1361, there is found this annotation:

'' While there is a conflict among the state court decisions as to the validity under the Fourteenth Amendment to the Federal Constitution of statutes or ordinances regulating the solicitation of contributions for charitable, religious, or individual purposes by pro-

hibiting such solicitation without a license and providing that the licensing officer or body shall issue such a license only where he deems the applicant a worthy person and his cause a worthy or bona fide cause, it is now settled by decisions of the Supreme Court of the United States that such a statute or ordinance is void, since it authorizes a previous restraint upon the free exercise of the freedoms guaranteed by the Fourteenth Amendment by a licensing officer or body having no fixed standard for determining whether a license must be issued.''

The case referred to in the annotation just quoted is *Cantwell* v. *Connecticut* (1940), 310 U. S., 296, 84 L. Ed., 1213, 60 S. Ct., 900. The court in that case announced certain fundamental principles which are applicable in the instant case. While the purpose of solicitation in the *Cantwell case* was religious, whereas in the instant case it is charitable, the same fundamental principles apply. In that case the fourth paragraph of the syllabus is as follows:

''A state statute which forbids any person to solicit money or valuables for any alleged religious cause, unless a certificate therefor shall first have been procured from a designated official, who is required to determine whether such cause is a religious one and who may withold his approval if he determines that it is not, is a previous restraint upon the free exercise of religion and a deprivation of liberty without due process of law in violation of the Fourteenth Amendment. P. 304.

''So *held* as it was applied to persons engaged in distributing literature purporting to be religious, and soliciting contributions to be used for the publication of such literature.

''A state constitutionally may by general and nondiscriminatory legislation regulate the time, place and manner of soliciting upon its streets, and of holding

meetings thereon; and may in other respects safeguard the peace, good order and comfort of the community. The statute here, however, is not such a regulation. If a certificate is issued, solicitation is permitted without other restriction; but if a certificate is denied, solicitation is altogether prohibited.''

The statute of the state of Connecticut, quoted on page 301, *ibid.*, which was found to be invalid, provided:

'' 'No person shall solicit money, services, subscriptions or any valuable thing for any alleged religious, charitable or philanthropic cause, from other than a member of the organization for whose benefit such person is soliciting or within the county in which such person or organization is located unless such cause shall have been approved by the secretary of the public welfare council. Upon application of any person in behalf of such cause, the secretary shall determine whether such cause is a religious one or is a bona fide object of charity or philanthropy and conforms to reasonable standards of efficiency and integrity, and, if he shall so find, shall approve the same and issue to the authority in charge a certificate to that effect. Such certificate may be revoked at any time. Any person violating any provision of this section shall be fined not more than one hundred dollars or imprisoned not more than thirty days or both.' ''

On page 303, *ibid.*, the court said:

''We hold that the statute, as construed and applied to the appellants, deprives them of their liberty without due process of law in contravention of the Fourteenth Amendment.''

On page 304, *ibid.*, the court said:

''In every case the power to regulate must be so exercised as not, in attaining a permissible end, unduly to infringe the protected freedom. * * * It is equally clear that a state may by general and nondiscrimina-

tory legislation regulate the times, the places, and the manner of soliciting upon its streets, and of holding meetings thereon; and may in other respects safeguard the peace, good order and comfort of the community, without unconstitutionally invading the liberties protected by the Fourteenth Amendment. The appellants are right in their insistence that the act in question is not such a regulation. If a certificate is procured, solicitation is permitted without restraint but, in the absence of a certificate, solicitation is altogether prohibited.''

In commenting on the power conferred on the licensing agency of the state, the court, on page 305, *ibid.*, said:

''It will be noted, however, that the act requires an application to the secretary of the public welfare council of the state; that he is empowered to determine whether the cause is a religious one, and that the issue of a certificate depends upon his affirmative action. If he finds that the cause is not that of religion, to solicit for it becomes a crime. He is not to issue a certificate as a matter of course. His decision to issue or refuse it involves appraisal of facts, the exercise of judgment, and the formation of an opinion. He is authorized to withold his approval if he determines that the cause is not a religious one. Such a censorship of religion as the means of determining its right to survive is a denial of liberty protected by the First Amendment and included in the liberty which is within the protection of the Fourteenth.''

On pages 306 and 307, *ibid.*, the court said:

''Without doubt a state may protect its citizens from fraudulent solicitation by requiring a stranger in the community, before permitting him publicly to solicit funds for any purpose, to establish his identity and his authority to act for the cause which he purports to represent. The state is likewise free to regulate the time

and manner of solicitation generally, in the interest of public safety, peace, comfort or convenience. But to condition the solicitation of aid for the perpetuation of religious views or systems upon a license, the grant of which rests in the exercise of a determination by state authority as to what is a religious cause, is to lay a forbidden burden upon the exercise of liberty protected by the Constitution.''

In a later decision, the Supreme Court in *Jones* v. *Opelika*, 316 U. S., 584, 86 L. Ed., 1691, 62 S. Ct., 1231, in commenting on its ruling in the *Cantwell case*, on page 595, said:

''In the *Cantwell case*, the secretary of the public welfare council was to determine whether the object of charitable solicitation was worthy, p. 302. We held the requirement bad.''

The ordinance under construction in the instant case bears a striking similarity to the statute under construction in the *Cantwell case*, and contains similar invalid provisions. For later decisions by the Supreme Court, see *Martin* v. *City of Struthers* (1943), 319 U. S., 141, 87 L. Ed., 1313, 63 S. Ct., 862; *Breard* v. *Alexandria* (1951), 341 U. S., 622, 95 L. Ed., 1233, 71 S. Ct., 920.

With respect to the delegation of powers, the rule is concisely stated in the third paragraph of the syllabus in *Belden* v. *Union Central Life Ins. Co.,* 143 Ohio St., 329, 55 N. E. (2d), 629, as follows:

''It is no violation of the constitutional inhibition against the delegation of legislative power for the General Assembly to establish a policy and fix standards for the guidance of administrative agencies of government while leaving to such agencies the making of subordinate rules within those fixed standards and the determination of facts to which the legislative policy applies.''

In our opinion, the ordinance does not meet the re-

quired test. A policy has not been established and standards have not been fixed for the guidance of the solicitations advisory board and the city commission.

The following words of Justice Roberts in the *Cantwell case* are appropriate and applicable here:

"He is not to issue a certificate as a matter of course. His decision to issue or refuse it involves apprisal of facts, the exercise of judgment, and the formation of an opinion. He is authorized to withhold his approval if he determines that the cause is not a religious one. Such a censorship * * * is a denial of liberty protected by the First Amendment and included in the liberty which is within the protection of the Fourteenth."

The ordinance delegates to the board and the city commission absolute power, without the benefit of an established policy or fixed standards for guidance, to issue or refuse a permit for solicitation by any organization however worthy the cause may be. Under the ordinance, permits are not granted as a matter of course. The decision of the board or city commission to issue or refuse a permit involves apprisal of facts, the exercise of judgment, and the formation of an opinion. The board, and the city commission under the provisions of the ordinance, are authorized to refuse a permit if they determine that the purpose of the solicitation does not fall within one of the categories mentioned, or that the field has been adequately covered, or that the purpose of the solicitation would not be beneficial to the people of Dayton, or that the solicitation would be an undue or unwarranted burden on the contributors. That the provisions of this ordinance have been wisely administered by the board from the date of its passage is not questioned. The question before the court is not whether it has or has not been wisely administered, but, rather, whether the ordinance confers on the board arbitrary and discriminatory power if it chooses to exercise it.

In *Hoyt Brothers, Inc., v. City of Grand Rapids,* 260 Mich., 447, 245 N. W., 509, a similar question was presented. The syllabus is as follows:

"In determining validity of ordinance vesting in city manager power to grant license for soliciting funds, selling goods, etc., for charitable purposes, court will not indulge presumption that he will or will not act reasonably, but decision is controlled by legal proposition that it is requisite to validity of ordinance that it state standard for guidance of official who passes on application for license.

"Ordinance vesting city manager with power to grant license for soliciting funds, selling goods, etc., for charitable purposes whenever it shall appear that charity is worthy one and persons making application are fit and responsible, is invalid as attempt to vest him with arbitrary power, where ordinance contains no rule by which to determine whether charity is 'worthy' or applicant is 'fit and responsible.' "

In our opinion, the requirement of the ordinance operates as a censorship of the society, is a denial of liberty without due process of law, and is a denial of the equal protection of the laws guaranteed by the Fourteenth Amendment of the United States Constitution; and, also, is a violation of the Ohio Constitution, in that it deprives the society of its liberty and equal protection of the laws guaranteed in Sections 1 and 2 of Article I, and is a violation of the right of freedom of speech and the press guaranteed in Section 11, Article I, and is in violation of the powers of local self-government conferred on municipalities in Section 3, Article XVIII.

We have no difficulty in holding with the appellant city, with respect to the fifth assignment of error, that the ordinance is reasonably related to the public welfare. The right to solicit funds may be reasonably regulated, such legislation being within the police

power of the municipality. In the instant case, the purpose of the ordinance is meritorious. The ordinance serves to prevent fraudulent solicitation and to protect the people of the city of Dayton against such unwarranted practices, and it provides for the regulation of bona fide solicitation for worthy causes. True, the police power is not a fixed quantity; it is elastic and capable of development, and must be adapted to the social, industrial and commercial conditions of the times. It is as expansive as the public needs, which are constantly fluctuating. 8 Ohio Jurisprudence, 338, Section 232. However, "the police power is subject to the limitations imposed by the federal and state Constitutions upon every power of government, and it will not be suffered to invade or impair the fundamental liberties of the citizen." 8 Ohio Jurisprudence, 379, Section 264.

In *Leonard, Jr., v. State,* 100 Ohio St., 456, 127 N. E., 464, the first paragraph of the syllabus states the rule concisely as follows:

"The measure of police power available to the government is the measure of public need, whether it apply to health, safety, protection or general welfare, *except as qualified by state and federal constitution.*" (Emphasis ours.)

In the exercise of its police power, the city of Dayton may provide for reasonable regulation of solicitations for funds. Reasonable regulation does not include the power to determine which of two equally worthy organizations shall be permitted to solicit in a particular field, or whether the field is adequately covered, or whether the object to be served would be beneficial to the people of Dayton, or whether the solicitation would be an undue and unwarranted burden on the contributors.

We hold against the appellant with respect to the sixth assignment of error, wherein it is contended that

the trial court erred in holding that the refusal of the permit is an illegal denial of plaintiff's corporate franchise right. The record shows that the trial court held that if the regulation is reasonable and within the police power of the municipality, such regulation is paramount to the franchise right, but if the regulation is unreasonable, such regulation cannot operate to deny the right of the organization to exercise its corporate franchise right. We agree with the judgment of the trial court.

In assignment of error No. 7, the appellant contends that the court erred in ruling that the entire ordinance was void. We agree with the judgment of the trial court. The illegal provisions of the ordinance are so related to other provisions of the ordinance, that the invalid provisions void the entire ordinance.

We do not find assignment of error No. 8 well made, in which it is claimed that one of the grounds for the refusal of the permit was the fact that at the time the application for a permit was filed by the society, a permit had already been granted to the Miami Valley Hospital to conduct a campaign during the same period of time. The point is made by the appellant that this is a reasonable regulation, and that, therefore, if one of the grounds assigned for the refusal of the permit is based on a reasonable regulation, the refusal was in order and the ordinance should not be held to be void. It does not necessarily follow that if one ground for refusal be based upon a reasonable regulation the ordinance would be valid. Conceding, without deciding, that one of the regulations is valid, on which the refusal to grant the permit was partly grounded, it does not follow that the ordinance should be declared valid, if other regulations are found to be invalid and the refusal to grant the permit was partly based on such invalid regulations. We have heretofore discussed the effect of the refusal to grant the

permit on this ground. The question is not presented, and we do not decide, whether the city commission would have been justified in refusing the permit on the sole ground of conflict in time with the campaign conducted by the Miami Valley Hospital. This ground for rejection of the permit, if no other question was raised, would now present a moot question.

We do not find assignment of error No. 9 well made, which involves the principal issue in this case, and which has already been discussed.

While we disagree with certain conclusions of law made by the trial court, such conclusions with which we disagree are not determinative of the issue presented, except the conclusion of law which is carried into the judgment to the effect that the provisions of the ordinance have no substantial relationship to the public welfare. However, on the principal issue for determination, this court agrees with the judgment of the trial court that the provisions of the ordinance are unreasonable, arbitrary, discriminatory, and contrary to the provisions of the Ohio Constitution and the Constitution of the United States. Further, we hold the ordinance to be an unlawful delegation of powers, which was contained in the conclusions of law, but which was not carried into the judgment.

With the modifications herein stated, the judgment is affirmed.

*Judgment accordingly.*

HORNBECK, P. J., and MILLER, J., concur.