LIVINGSTON ET AL., APPELLEES, *v.* CLAWSON ET AL., APPELLANTS.

(No. 81-CA-59—Decided June 8, 1982.)

*Messrs. Black, McCuskey, Souers & Arbaugh, Mr. Loren E. Souers* and *Mr. David D. Dowd, Jr.,* for plaintiffs-appellees.

*Shipman, Utrecht & Dixon Co., L.P.A.,* and *Mr. James C. Utrecht,* for defendants-appellants.

*Messrs. Miller, Schlemmer & Luring* and *Mr. Roger E. Luring,* for third-party defendant-appellant Miami County Democratic Party.

BROGAN, J. On April 17, 1981, the plaintiffs, seven elected county officials for Miami County, filed an action seeking relief by way of declaratory judgment with respect to their claim that Section 3 of Am. Sub. H.B. No. 1122, adopted by the General Assembly effective December 20, 1980, was unconstitutional and severable from the remaining Sections 1, 2 and 4 of the Act. The seven county officials included the prosecuting attorney, the sheriff, the engineer, the recorder, the treasurer, the clerk of courts, and the coroner. Joined as defendants were the individual members of the Board of Commissioners of Miami County, the Board of Commissioners of Miami County, the Auditor of Miami County, and William J. Brown in his capacity as the Attorney General for the state of Ohio.

An answer was filed on behalf of the

defendants commissioners, auditor and Board of Commissioners of Miami County by special counsel, given the fact that the Prosecuting Attorney of Miami County was a party-plaintiff.

A hearing was conducted on the merits and after receiving briefs from all parties the trial court published its decision and filed a judgment entry granting judgment to the plaintiffs by which Section 3 of Am. Sub. H.B. No. 1122 was declared to be unconstitutional in that it violated Sections 20 and 26 of Article II of the Ohio Constitution. Further, the trial court found Section 3, the unconstitutional section, to be severable from Sections 1, 2 and 4 and, as a consequence, ordered that the seven plaintiffs be compensated in their capacity as elected county officials of Miami County, consistent with the provisions of Section 1 of Am. Sub. H.B. No. 1122 for the years 1981, 1982, 1983 and 1984.

The defendants timely moved for findings of fact separately stated from conclusions of law. The court complied with the request. Thereafter, the defendants and the third-party defendant filed timely notices of appeal.

· The Ohio General Assembly adopted and the Governor of the state of Ohio approved, effective December 20, 1980, Am. Sub. H.B. No. 1122 calling for an increase in the annual salary for elected county officials, except the office of county auditor and the offices of common pleas and probate judges. In November 1980, general elections were held in Ohio for the offices of county prosecuting attorney, sheriff, engineer, recorder, treasurer, coroner, clerk of courts and commissioner. Those persons elected in November 1980 to the county offices were required to take office by the first Monday in January 1981 with the exception of the county treasurer. Section 1 of the salary increase bill provided for graduated increases in the compensation for the various county elected officials in each of the years 1981, 1982, 1983 and 1984. Section 3 of the salary in-

crease bill contained the following provision:

"The board of county commissioners of each county prior to January 1, 1981, may adopt a resolution declaring that sufficient county funds will be available to pay to the county officials listed in sections 325.04, 325.06, 325.08, 325.09, 325.10, 325.11, 325.14, and 325.15 of the Revised Code the additional compensation provided for in those sections by this act. If the board of county commissioners does not adopt such a resolution, each county official shall, notwithstanding sections 325.04, 325.06, 325.08, 325.09, 325.10, 325.11, 325.14, and 325.15 of the Revised Code, as amended by this act, be compensated in accordance with former sections 325.04, 325.06, 325.08, 325.09, 325.10, 325.11, 325.14, and 325.15 of the Revised Code, as such sections were in effect prior to their amendment by this act, and none of the additional compensation provided for in those sections by this act shall be paid to such officials for the terms of office commencing in 1981."

The Board of Commissioners of Miami County did not adopt the resolution provided for in Section 3. Rather, on December 31, 1980, as reflected on the Journal of the Board of Commissioners of Miami County, and the testimony adduced at the hearing, the following resolution was adopted by a divided board:

## "RESOLUTION DENYING PAY RAISES TO ELECTED OFFICIALS

"Mr. Massie made a motion to deny pay raises to elected officials as provided for in [Am.] Sub. H.B. No. 1122. The raises would have been for a four-year period for all elected officials excepting the Auditor and Judges.

"Mr. Clawson seconded the motion and the Board voted as follows upon roll call: Mr. Clawson, yea; Mr. Knoop, nay; and Mr. Massie, yea."

Dale Davis, the Auditor of Miami County, was not consulted with respect to the county's financial condition by Com-

missioners Clawson and Massie prior to the negative vote on the subject of the pay raises. Mr. Davis stated that at the very minimum, the County General Fund had a carryover balance at the end of 1980 in the sum of $528,222.07.

Commissioner Robert Clawson and former Commissioner Roger Massie testified that they voted against the pay raises because they could not be certain that there would be sufficient funds over the four-year period to pay the raises.

The plaintiffs' complaint alleges that eighty-one of Ohio's eighty-eight counties adopted the resolution called for by Section 3 of Am. Sub. H.B. No. 1122, and that as a consequence, the county officials in those eighty-one counties were receiving the increase in salary mandated by Section 1 of the Act. Proof, by way of affidavits, and by agreement of counsel, was offered to establish that seventy-three counties had adopted the resolution called for by Section 3 and that the elected officials of those counties were receiving the increased compensation.

The sole assignment of error constitutes the claim that the trial court erred in granting final judgment for the plaintiffs-appellees in that final judgment should have been granted to the defendants-appellants. In support of the sole assignment of error, the defendants-appellants contend first that Section 3 is not unconstitutional, and secondly, if Section 3 is unconstitutional, its provisions are not severable from the remaining provisions of Am. Sub. H.B. No. 1122. The plaintiffs-appellees contend that Section 3 is unconstitutional in that it violates both Sections 20[1] and 26[2] of Article II of the Ohio Constitution. Secondly, the plaintiffs-appellees contend that Section 3 is severable from the remaining provisions of Am. Sub. H.B. No. 1122. As a consequence, appellees argue the trial court did not err in declaring Section 3 unconstitutional and in ordering the defendant board of commissioners and the defendant auditor to pay the plaintiffs the additional compensation consistent with the provisions of Section 1 of Am. Sub. H.B. No. 1122.

We agree with the trial court that Section 3 of Am. Sub. H.B. No. 1122, in placing the decision to grant a salary increase in the hands of county commissioners, violates the Ohio Constitution, i.e., Sections 20 and 26 of Article II. *State, ex rel. Guilbert,* v. *Yates* (1902), 66 Ohio St. 546; *State, ex rel. Montgomery,* v. *Rogers* (1905), 71 Ohio St. 203; *State, ex rel. Godfrey,* v. *O'Brien* (1917), 95 Ohio St. 166; *Neff* v. *Bd. of County Commrs.* (1957), 166 Ohio St. 360 [2 O.O.2d 261].

The Supreme Court of Ohio in *Yates* stated:

"County officers are not local officers, but are a part of the permanent organization of the government of the state, and the subject of compensation to county officers is not local in its nature, and an act of the General Assembly upon that subject is a law of general nature which must operate uniformly throughout the state. *Pearson et al.* v. *Stephens et al.,* 56 Ohio St., 126, overruled."

In *O'Brien, supra,* the Ohio Supreme Court struck down legislation granting to the board of county commissioners the

---

[1] Section 20, Article II of the Ohio Constitution provides:

"The general assembly, in cases not provided for in this constitution, shall fix the term of office and the compensation of all officers; but no change therein shall affect the salary of any officer during his existing term, unless the office be abolished."

[2] Section 26, Article II of the Ohio Con-

stitution provides:

"All laws, of a *general* nature, shall have a uniform operation throughout the state; nor, shall any act, except such as relates to public schools, be passed, to take effect upon the approval of any other authority than the general assembly, except, as otherwise provided in this constitution." (Emphasis added.)

power to fix compensation for members of the board of revision. The court relied upon Section 20 of Article II in finding an improper delegation of power. Additionally, the Ohio Supreme Court in *O'Brien* cited Section 26 in support of its determination that the statute under attack was unconstitutional.

· The fourth and fifth paragraphs of the syllabus in *O'Brien, supra,* state as follows:

"4. The General Assembly of Ohio cannot delegate the authority conferred upon it by Section 20 of Article II of the Constitution to fix the compensation of officers.

"5. The provisions of an act of a General Assembly purporting to confer authority upon the county auditor, or the board of county commissioners, to fix the salary of county or township officials within certain limits, without providing a uniform rule for determining such compensation in the several counties of the state, are in conflict of Section 26 of Article II of the Constitution of Ohio, and void."

Again, in 1957, in *Neff* v. *Bd. of County Commrs.* (1957), 166 Ohio St. 360 [2 O.O.2d 261], an effort by the General Assembly to delegate to the board of county commissioners the duty to establish the salary for the justices of the peace in the county was summarily struck down as in violation of both Sections 20 and 26 of Article II of the Ohio Constitution. In so declaring, the Ohio Supreme Court cited with approval *Yates, supra,* and *O'Brien, supra.*

Assuming for purposes of argument that the General Assembly may delegate its power to set the salaries for county officials, does the delegation contained in Section 3 of Am. Sub. H.B. No. 1122 meet standards for the delegation of legislative powers? We think not.

The test of the validity of legislatively delegated powers depends upon the prior adoption of a declared policy by the legislature and a clear definition by it of the circumstances in which its command is to take effect. *OPP Cotton Mills, Inc.* v. *Administrator* (1941), 312 U.S. 126. In *Panama Refining Co.* v. *Ryan* (1935), 293 U.S. 388, the Supreme Court struck down a congressional delegation containing no guidelines: "The Congress left the matter to the President without standard of rule, to be dealt with as he pleased." *Id.* at 418.

The language in Section 3 is permissive. The board *"may adopt a resolution."* Or it may not. There is nothing there to say when to adopt and when not to, unless the Act is judicially rewritten to make the resolution mandatory if "the funds will be available." Under the legislation the Miami County Commissioners would not be duty bound to pass a resolution if sufficient funds were available for the pay raise, but could (even arbitrarily) not pass such resolution.

It is a general rule that a legislative delegation of power to an administrative agency must be surrounded by standards sufficient to guide and restrict that agency in the power conferred. *Matz* v. *J. L. Curtis Cartage Co.* (1937), 132 Ohio St. 271 [8 O.O. 41], approved and followed in *Blue Cross* v. *Jump* (1980), 61 Ohio St. 2d 246 [15 O.O.3d 257]. Standards must be adequate to prevent arbitrary and capricious acts on the part of the administrator. *American Cancer Society, Inc.* v. *Dayton* (1952), 94 Ohio App. 131 [50 O.O. 218], affirmed (1953) 160 Ohio St. 114 [51 O.O. 32].

Having determined that Section 3 of Am. Sub. H.B. No. 1122 is unconstitutional, is Section 3 severable from the other sections of the Act so that they constitute an effective pay raise Act? Sections 1, 2 and 4 considered together represent a typical legislative act granting pay raises to county officials. Judge Martin addressed the issue of severability in a similar lawsuit brought to effectuate the pay raises for county officials in Fairfield County. Judge Martin found Section 3 unconstitutional but held the remainder of the legislation constitutional and capable

of implementation. *James W. Luse* v. *Roger Engle* (July 13, 1981), Fairfield C.P. No. 49717, unreported.

Judge Martin stated:

"With regard to the issue of severability, Sections 1, 2, and 4 of [Am. Sub. H.B. No. 1122] together constitute a typical and complete pay raise bill such as is passed every four years by the Assembly. These sections may stand on their own without Section 3, which in the court's opinion is not constitutional. The apparent primary intent of the legislature was to grant certain elected officials an increase in pay with the pocket-veto provision contained in Section 3 being merely an incidental."

It is a general rule of law that if an unconstitutional part of an Act is stricken, and if that which remains is complete in and of itself, and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which is rejected, the remaining part must be sustained. *Bowles* v. *State* (1881), 37 Ohio St. 35; 44; *State* v. *Kassay* (1932), 126 Ohio St. 177, 180; *State, ex rel. Herbert,* v. *Ferguson* (1944), 142 Ohio St. 496, 503 [27 O.O. 415].

In *Geiger* v. *Geiger* (1927), 117 Ohio St. 451, the Ohio Supreme Court set forth a series of tests for determining the issues of severability or inseverability. The tests, as set forth, at page 466, of the opinion follow:

" '(1) Are the constitutional and the unconstitutional parts capable of separation so that each may be read and may stand by itself? (2) Is the unconstitutional part so connected with the general scope of the whole as to make it impossible to give effect to the apparent intent of the Legislature if the clause or part is stricken out? (3) Is the insertion of words or terms necessary in order to separate the constitutional part from the unconstitutional part, and to give effect of the former only?' "

It is clear that the answer to test (1) is in the affirmative. It is also quite clear that no insertion of words or terms is necessary in order to separate the constitutional part from the unconstitutional part, and to give effect of the former (*i.e.,* a typical pay raise bill).

Appellants, however, argue that the legislature would not have passed the Amended Substitute House Bill had not Section 3 been added to permit county commissioners the opportunity to deny pay raises where county funds appeared inadequate.

Because of the in-term pay raise prohibition contained in Section 20 of Article II of the Ohio Constitution, the legislature has frequently addressed this issue near the end of the four-year term of county officials. We cannot agree with the appellants that because the amended bill contained an option for those counties which might find pay raises economically difficult, that if confronted with its unconstitutionality, they (the legislature) would have intended other county officials in economically sound counties to go without a pay raise for a four-year period (particularly in the face of spiraling inflation which in effect produces a pay reduction for county officials).

Section 4 of the Act states:

"This act is hereby declared to be an emergency measure necessary for the immediate preservation of the public peace, health, and safety. *The reason for such necessity lies in the fact that immediate action is necessary in order to prevent a delay of four years in the implementation of portions of this act and the hardship which would ensue from this delay.* Therefore, this act shall go into immediate effect." (Emphasis added.)

R.C. 1.47 provides:

"In enacting a statute, it is presumed that:

"(A) Compliance with the constitutions of the state and of the United States is intended;

"(B) The entire statute is intended to be effective;

178

"(C)  A just and reasonable result is intended;

"(D)  A result feasible of execution is intended."

R.C. 1.50 states:

"If any provision of the section of the Revised Code or the application thereof to any person or circumstance is held invalid, the invalidity does not affect other provisions or applications of the section or related sections which can be given effect without the invalid provisions or application, and to this end the provisions are severable."

While R.C. 1.47 indicates a presumption that an entire statute is intended to be effective, the legislature clearly in R.C. 1.50 provided for the event their legislation might be determined by the courts to be partially invalid or unconstitutional. It was the legislature's clear intent that other provisions of legislation not determined to be invalid be given effect where a just and reasonable result capable of execution can be effectuated. Sections 1, 2 and 4 of Am. Sub. H.B. No. 1122 can be so effectuated and we find the trial court properly ruled the appellees are entitled to be compensated consistent with the provisions of that legislation.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

KERNS, P.J., and WEBER, J., concur.