COMTECH SYSTEMS, INC., APPELLANT, *v.* LIMBACH, TAX COMMR., APPELLEE.

[Cite as ComTech Systems, Inc. *v.* Limbach (1991), 59 Ohio St. 3d 96.]

(No. 90-661—Submitted January 16, 1991—Decided April 24, 1991.)

*Schottenstein, Zox & Dunn, Richard A. Barnhart, Michael M. Schmidt* and *Susan D. Rector,* for appellant.

*Lee I. Fisher,* attorney general, and *Barton A. Hubbard,* for appellee.

*Per Curiam.* We hold that (1) ComTech's transactions were taxable under R.C. 5739.01 and 5739.02, (2) Am. Sub. H.B. No. 291 is constitutional, (3) ComTech satisfactorily raised the constitutional questions, and (4) Sub. S.B. No. 112 does not apply retroactively. Consequently, we affirm the BTA's decision.

## I.  Introduction

Effective July 1, 1983, the General Assembly enacted Am. Sub. H.B. No. 291, 140 Ohio Laws, Part II, 2872, which, *inter alia,* levied a sales tax on automatic data processing and computer services. R.C. 5739.01(B)(3)(e), as enacted by this bill, stated:

"(B) 'Sale' and 'selling' include * * *.

"* * *

"(3)  All transactions by which:

"* * *

"(e)  Automatic data processing and computer services are or are to be provided for use in business. Notwithstanding any other provision of this chapter, such transactions that occur between members of an affiliated group are not sales when the true object of the transaction is the receipt by the consumer of automatic data processing or computer services rather than the receipt of personal or professional services to which automatic data processing or computer services are incidental or supplemental. For this purpose, personal and professional services includes feasibility studies, consulting and design services, technical instruction and aid, accounting or legal services, or any other situation where the service provider receives data or information and studies, alters, analyzes, interprets or adjusts such materials. * * *" 140 Ohio Laws, Part II, at 3215.

R.C. 5739.01(Y), as enacted by the same bill, defined "[a]utomatic data processing and computer services" as:

"* * * [T]he processing of others' data; providing direct access to computer equipment by remote or proximate access for the purpose of processing data or examining or acquiring data stored in or accessible to such computer equipment; designing, selling, leasing, modifying, or debugging of specialized or customized computer programs or other software; and consultation, systems analysis, and training services provided in conjunction with the design, installation, revision, conversion, sale, lease, or operation of taxable computer equipment or systems." *Id.* at 3220.

Effective July 6, 1984, the General Assembly enacted Sub. H.B. No. 794, 140 Ohio Laws, Part II, 4746, amending R.C. 5739.01(B)(3)(e) but leaving R.C. 5739.01(Y) intact. *Id.* at 4778, 4785. The General Assembly moved the condition concerning the true object of the transaction so that R.C. 5739.01(B)(3)(e) included the following within the definition of "sales":

"(3)  All transactions by which:
"* * *

"(e)  Automatic data processing and computer services are or are to be provided for use in business when the true object of the transaction is the receipt by the consumer of automatic data processing or computer services rather than the receipt of personal or professional services to which automatic data processing or computer services are incidental or supplemental. * * *

"Notwithstanding any other provision of this chapter, such transactions that occur between members of an affiliated group are not sales. * * *"

Then, effective January 10, 1985, the General Assembly enacted Sub. S.B. No. 112, 140 Ohio Laws, Part I, 225, and again amended R.C. 5739.01. In the title of the Act, the General Assembly stated one purpose of the Act to be:

"* * * [T]o clarify the exceptions from the sales tax on automatic data processing and computer services * * *."

This Act modified R.C. 5739.01(B)(3)(e) by deleting the examples of personal and professional services, 140 Ohio Laws, Part I, 227. It also, in R.C. 5739.01(Y), redefined "[a]utomatic

data processing and computer services" and inserted a new definition of "personal and professional services":

"(1) 'Automatic data processing and computer services' means: processing of others' data, including keypunching or similar data entry services together with verification thereof; providing access to computer equipment for the purpose of processing data or examining or acquiring data stored in or accessible to such computer equipment; and services consisting of specifying computer hardware configurations and evaluating technical processing characteristics, computer programming, and training of computer programmers and operators, provided in conjunction with and to support the sale, lease, or operation of taxable computer equipment or systems. 'Automatic data processing and computer services' shall not include personal or professional services.

"(2) As used in divisions (B)(3)(e) and (Y)(1) of this section, 'personal and professional services' means all services other than automatic data processing and computer services, including but not limited to:

"(a) Accounting and legal services such as advice on tax matters, asset management, budgetary matters, quality control, information security, and auditing and any other situation where the service provider receives data or information and studies, alters, analyzes, interprets, or adjusts such material;

"(b) Analyzing business policies and procedures;

"(c) Identifying management information needs;

"(d) Feasibility studies including economic and technical analysis of existing or potential computer hardware or software needs and alternatives;

"(e) Designing policies, procedures, and custom software for collecting business information, and determining how data should be summarized, sequenced, formatted, processed, controlled and reported so that it will be meaningful to management;

"(f) Developing policies, and procedures that document how business events and transactions are to be authorized, executed, and controlled;

"(g) Testing of business procedures; and

"(h) Training personnel in business procedure applications.

"The services listed in divisions (Y)(2)(a) to (h) of this section, are not automatic data processing or computer service." *Id.* at 233-234.

II. Personal Service Exception

A. Under R.C. 5739.01(B)(5), ComTech argues, in Proposition of Law No. 7, that, contrary to the BTA's finding, its services were personal or professional services under *Emery Industries, Inc., supra,* and exempt. The commissioner responds that the R.C. 5739.01(B)(5) personal services exemption, upon which *Emery* relied, and case law interpreting it do not apply to automatic data processing and computer services because this transaction has its own definition for these services. We agree with the commissioner.

Throughout the relevant periods, R.C. 5739.01(B)(5) provided:

"* * * Other than as provided in this section, 'sale' and 'selling' do not include professional, insurance, or personal service transactions which involve the transfer of tangible personal property as an inconsequential element, for which no separate charges are made."

*Emery Industries, Inc., supra,* pointed out that this exception applied to transactions in tangible personal property. Here, however, the General Assembly has taxed a service. Conse-

quently, having another type of transaction under its aim, *Emery* does not apply to the instant transaction.

Moreover, the first clause of the exception, "[o]ther than as provided in this section," negates employing this exception in the instant case because R.C. 5739.01(B)(3)(e) and, now, (Y) define "personal services." Thus, R.C. 5739.01(B)(3)(e) provides other than as in R.C. 5739.01(B)(5).

B. ComTech argues in Proposition of Law No. 6 that its services were not taxable under R.C. 5739.01(Y). However, before its amendment by Sub. S.B. No. 112, R.C. 5739.01(Y) defined ComTech's services of designing, modifying, and debugging of computer software programs as taxable automatic data processing and computer services.

Under R.C. 5739.02, all of ComTech's transactions are presumed taxable until the contrary is established. ComTech did not attempt to show what transactions included the taxable service and what transactions did not. Thus, all its transactions are taxable.

### III. One-Subject Rule

In its first proposition, ComTech argues that Am. Sub. H.B. No. 291 violates the one-subject rule because it contains a variety of topics. The commissioner replies that the Act contains the single subject of government appropriations and that the General Assembly may levy a tax on a new object in it.

Section 15(D), Article II of the Ohio Constitution states:

"No bill shall contain more than one subject, which shall be clearly expressed in its title. * * *"

In *State, ex rel. Dix,* v. *Celeste* (1984), 11 Ohio St. 3d 141, 11 OBR 436, 464 N.E. 2d 153, syllabus, we held:

"The one-subject rule contained in Section 15(D), Article II of the Ohio Constitution is merely directory in nature; while it is within the discretion of the courts to rely upon the judgment of the General Assembly as to a bill's compliance with the Constitution, a manifestly gross and fraudulent violation of this rule will cause an enactment to be invalidated. (*Pim* v. *Nicholson,* 6 Ohio St. 176, approved and followed, and extended; *State, ex rel. Attorney General,* v. *Covington,* 29 Ohio St. 102, paragraph seven of the syllabus, modified.)"

In *Dix,* as in the instant case, we reviewed a state appropriations bill. At 11 Ohio St. 3d at 143, 11 OBR at 438, 464 N.E. 2d at 155-156, we observed that the one-subject rule "* * * attacks logrolling by disallowing unnatural combinations of provisions in acts * * *. By limiting each bill to a single subject, the bill will have unity and thus the purpose of the provision will be satisfied." We also stated that this rule disallows amendments not germane to the subject of the bill. We noted that the one-subject rule is not directed at plurality of topics but at disunity in the subject. *Id.* at 146, 11 OBR at 440-441, 464 N.E. 2d at 158. We concluded that the bill there did not violate the one-subject rule because it related to funding the operations of programs, agencies, and matters described elsewhere in the bill.

We cannot conclude that Am. Sub. H.B. No. 291 is a manifestly gross and fraudulent violation of the one-subject rule. As in *Dix,* Am. Sub. H.B. No. 291 is an appropriations bill and deals with the operations of the state government. It may contain a new object of taxation because the tax funds government operations described elsewhere in the Act.

### IV. Three-Consideration Rule

Section 15(C), Article II of the Ohio Constitution provides:

"Every bill shall be considered by each house on three different days, unless two-thirds of the members elected to the house in which it is pending suspend this requirement, and every individual consideration of a bill or action suspending the requirement shall be recorded in the journal of the respective house. * * *"

Furthermore, Section 9, Article II of the Ohio Constitution states:

"Each House shall keep a correct journal of its proceedings, which shall be published. * * *"

ComTech, in Proposition of Law No. 2, attempts to prove that a quorum did not exist at the time the House considered Am. Sub. H.B. No. 291 and, thus, it argues, that chamber did not consider the bill on three different days. Alternatively, it argues that the amendment to the bill which imposed the tax on automatic data processing and computer services vitally changed the bill and that, since this was added by a Senate committee after the House had considered the bill three times and the Senate twice, each chamber should have again considered the bill on three different days.

In *Hoover* v. *Bd. of Franklin Cty. Commrs.* (1985), 19 Ohio St. 3d 1, 19 OBR 1, 482 N.E. 2d 575, we held that an Act is invalid under this provision if (1) the Ohio Constitution mandates a recording of a particular legislative step in the legislative journals, and (2) no such entry appears. *Hoover,* moreover, recognized that a constitutional amendment in 1973 had changed the three-consideration rule from a directory one to a mandatory one. It also held that the court need look only at the journals to determine whether the proper procedure had been followed. This has long been the rule in Ohio.

*State, ex rel. Herron,* v. *Smith* (1886), 44 Ohio St. 348, 7 N.E. 447, paragraph one of the syllabus, held that the authenticity of a House journal cannot be impeached by parol evidence. Accord *Billington* v. *Cotner* (1971), 25 Ohio St. 2d 140, 54 O.O. 2d 270, 267 N.E. 2d 410. *Ritzman* v. *Campbell* (1915), 93 Ohio St. 246, 112 N.E. 591, paragraph one of the syllabus, held that, as to whether a bill may be impeached because it did not receive a constitutional majority, "* * * the legislative journals must provide the appropriate as well as the conclusive evidence."

Thus, if the legislative journal records that the legislative body considered the bill on three different days, the legislative body did so. Here, each legislative journal recorded these facts; consequently, Am. Sub. H.B. No. 291 received constitutional consideration.

Furthermore, adding this new object of taxation did not vitally alter the substance of the bill. If it had, *Hoover* would have required reconsideration anew. The Senate committee amendment introduced this object of taxation to increase the state revenues that the bill appropriated. Raising and spending revenue are at the heart of an appropriations bill; adding a new taxable transaction does not vitally alter this scheme.

## V. Jurisdiction Over Constitutional Questions

The commissioner, in her fourth proposition of law, asserts, in opposition to ComTech's third and fourth propositions of law, that the court has no jurisdiction over either constitutional challenge because ComTech did not include these errors in its notice of appeal to the BTA.

As to the one-subject question, the BTA concluded that it could not rule on the question, but that, under *Cleveland Gear Co.* v. *Limbach* (1988), 35 Ohio

St. 3d 229, 520 N.E. 2d 188, paragraph two of the syllabus, ComTech could raise this question initially in a court. The BTA found that ComTech, under this error, was arguing that the statute was unconstitutional on its face.

The BTA, as to the three-consideration question, concluded that it would be deciding whether the statute was unconstitutional on its face but that, additionally, ComTech needed to prove a particular set of facts to establish this. Since ComTech had not specified this error in its notice, the BTA ruled that it need not receive any evidence.

The BTA also rejected ComTech's assertion that paragraph two of the parties' stipulation, in which they agreed that ComTech had properly perfected its claims and the appeal, satisfied the notice requirement. The BTA found this argument fallacious because, first, the stipulation bears on taking all action necessary to perfect ComTech's claims and appeal, not on the BTA's jurisdiction to consider errors not contained in the notice. Second, the BTA ruled that a tribunal could not agree to accept jurisdiction when an appeal is not perfected.

In *Cleveland Gear*, we required that a challenge to the constitutionality of a statute based on a particular state of facts be raised in the notice of appeal to the BTA, so that the BTA could receive evidence concerning that question. Moreover, this allowed the opponent notice and opportunity to offer competing evidence. All this would accommodate the court's need for extrinsic evidence to decide the case. We also held that a challenge to the constitutionality of a statute on its face could be raised initially in the courts. This latter challenge does not require extrinsic evidence.

The BTA correctly noted that we could decide the one-subject question without extrinsic evidence. We need only examine the Act to decide this. Consequently, ComTech may raise this challenge here.

The three-consideration question, however, is not so easily resolved. This presents us with a hybrid situation. ComTech argues that the General Assembly did not validly enact Am. Sub. H.B. No. 291, which contained the statute affecting ComTech. Consequently, it charges, the statute is unconstitutional. This question, nevertheless, is in the nature of a facial challenge.

As noted above, the legislative journals conclusively establish the facts of the legislative process. Under Evid. R. 201(B)(2), we can judicially notice a fact not subject to a reasonable dispute if it is "* * * capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Furthermore, under Evid. R. 902(10), if the law of a jurisdiction declares a document presumptively authentic (*e.g., Hoover*), no extrinsic evidence of authenticity need precede its admissibility. Consequently, we can decide this question without an evidentiary record made at the BTA and, under the reasoning of *Cleveland Gear*, have jurisdiction over this question.

### VI. Retroactivity of Sub. S.B. No. 112

ComTech, in its fifth proposition, asserts that language in the title of Sub. S.B. No. 112, which states the purpose to clarify exceptions from sales tax on automatic data processing and computer services, expresses the legislative intent to apply the law retroactively. The commissioner counters this argument and maintains, moreover, that the statute is not remedial and, consequently, cannot be applied retroactively.

R.C. 1.48, codifying Section 28, Article II of the Ohio Constitution, presumes statutes to be prospective in operation unless expressly made retrospective. We have held that statutes operate retroactively only if (1) the General Assembly clearly expresses that the statute applies retroactively, and (2) the statute is remedial or procedural. *State, ex rel. Beacon Journal Publishing Co.,* v. *Ohio Dept. of Health* (1990), 51 Ohio St. 3d 1, 2-3, 553 N.E. 2d 1345, 1346; *Wean, Inc.* v. *Indus. Comm.* (1990), 52 Ohio St. 3d 266, 268, 557 N.E. 2d 121, 123.

Furthermore, the title of an Act "* * * indicates the purpose which induced the enactment of such law, and must be considered in arriving at a correct interpretation of its terms." *Lexa* v. *Zmunt* (1931), 123 Ohio St. 510, 176 N.E. 82, paragraph two of the syllabus. Accordingly, we should consider the title of this Act in interpreting it.

We conclude that this language, clarifying an exemption to a taxable transaction, does not express the intention that the statute is to operate retroactively. This phrase clarifies what future transactions are excepted from the tax; it does not declare that the statute should apply to transactions that have already occurred for which a refund should be paid. Thus, the statute does not operate retroactively.

Accordingly, we affirm the BTA's decision.

*Decision affirmed.*

MOYER, C.J., SWEENEY, HOLMES, DOUGLAS, H. BROWN and RESNICK, JJ., concur.

WRIGHT, J., dissents.