THE STATE, EX REL. HINKLE, *v.* FRANKLIN COUNTY BOARD OF ELECTIONS ET AL.

[Cite as *State, ex rel. Hinkle, v. Franklin Cty. Bd. of Elections* (1991), 62 Ohio St.3d 145.]

(No. 91–1845—Submitted October 21, 1991—Decided October 22, 1991—Opinion announced October 25, 1991.)

146

*Manley, Burke & Fischer, Timothy M. Burke* and *Carol S. Wood,* for relator.

*Michael Miller,* Prosecuting Attorney, and *Harland H. Hale,* for respondent.

*Lee I. Fisher,* Attorney General, and *Nancy Johnston,* for intervenor-respondent Secretary of State, Bob Taft.

*Bruce E. Bailey,* Law Director, and *William J. McLoughlin,* urging denial for *amicus curiae,* city of Westerville.

*Donald J. McTigue,* urging denial for *amici curiae,* Cooker Restaurant Corp. et al.

———————

*Per Curiam.* The principal issue presented in this case is: Does Am.Sub. H.B. No. 200 violate Section 15(D), Article II of the Ohio Constitution in that the bill contains more than one subject? For reasons that follow, we hold that Am.Sub.H.B. No. 200, as it was enacted, is unconstitutional under Section 15(D), Article II, and, therefore, that the board of elections cannot invalidate this local option petition pursuant to Section 7 of that bill. Having held this, we need not also decide whether Section 7 is invalid for the other reason Hinkle asserts—that it violates Section 28, Article II of the Ohio Constitution by requiring retroactive application of the current "residence district" definition in R.C. 4301.01(B)(19).

However, our holding requires us also to resolve the board of elections' arguments that a writ of mandamus should be denied because (1) the instant petition is invalid due to fraud, (2) Hinkle lacks standing, or (3) the doctrine of laches applies. For reasons that follow, we find that these arguments do not justify denial of the writ. Thus, we grant a writ of mandamus, but only to compel the board's reconsideration of the petition for the reason that the petition need not comply with current R.C. 4301.01(B)(19).

### The One–Subject Rule

Hinkle argues that Am.Sub.H.B. No. 200 is invalid and cannot be applied to him because it contains two subjects with no common relationship or purpose between them and, therefore, violates Section 15(D), Article II of the Ohio Constitution ("No bill shall contain more than one subject, which shall be clearly expressed in its title. * * * ").

We have held that the one-subject rule in Section 15(D), Article II is "merely directory in nature" and that courts have discretion "to rely upon the judgment of the General Assembly as to a bill's compliance with the Constitution." *State, ex rel. Dix, v. Celeste* (1984), 11 Ohio St.3d 141, 11 OBR 436, 464 N.E.2d 153, syllabus. Accord *ComTech Systems, Inc. v. Limbach* (1991), 59 Ohio St.3d 96, 99, 570 N.E.2d 1089, 1093. However, we have also held that an enactment will be invalidated due to a "manifestly gross and fraudulent violation of this rule." *Dix, supra,* at syllabus.

Hinkle relies on *Hoover v. Bd. of Franklin Cty. Commrs.* (1985), 19 Ohio St.3d 1, 19 OBR 1, 482 N.E.2d 575, to establish such a violation here. In *Hoover*, we considered the enactment of a bill that contained provisions about " 'financing, acquiring, and constructing hospital and health care facilities,' " and other provisions about " 'the licensure of a licentiate of the medical council of Canada.' " *Id.* at 6, 19 OBR at 5, 482 N.E.2d at 580. Our opinion suggested that these provisions might be so blatantly unrelated that the bill violated the one-subject rule; however, we did not reach the constitutionality of the bill because we were asked to decide only whether a complaint containing this allegation stated a claim for relief sufficient to withstand dismissal under Civ.R. 12(B)(6). Even so, Hinkle asserts that the provisions of Am.Sub.H.B. No. 200 are even less related than were the provisions in the *Hoover* bill.

We agree. Am.Sub.H.B. No. 200 mainly addresses matters pertaining to the state judicial system: (1) it creates an environmental division in the Franklin County Municipal Court and a judge for that division, amends related provisions, and creates the Clermont County Municipal Court; (2) it adds a common pleas judge in Lucas County; (3) it makes revisions in the municipal and county court law; and (4) it changes the disposition of certain fines paid into municipal and county courts. We see no rational relationship or common purpose between provisions for the Ohio judiciary and Section 7, a liquor control law that defines "residence district" for the purpose of exercising the local option privilege.

We recognize that the one-subject rule prohibits disunity of subjects, but allows a plurality of topics. *ComTech Systems, Inc., supra,* 59 Ohio St.3d at 99, 570 N.E.2d at 1093. However, we are not persuaded by the board of elections' argument that Am.Sub.H.B. No. 200 manifests two topics on the same subject—"election matters"—because it provides for elective judicial offices and pertains to local option elections. To say that laws relating to the state judiciary and local option have elections in common is akin to saying that securities laws and drug trafficking penalties have sales in common—the connection is merely coincidental.

In *Dix,* we said:

" * * * [A]n absence of common purpose or relationship between specific topics in an act and when there are no discernible practical, rational or legitimate reasons for combining * * * provisions in one act * * * [strongly suggest] that the provisions were combined for tactical reasons, *i.e.,* logrolling. Inasmuch as this was the very evil the one-subject rule was designed to prevent, an act which contains such unrelated provisions must necessarily be

held to be invalid in order to effectuate the purposes of the rule." *Id.*, 11 Ohio St.3d at 145, 11 OBR at 440, 464 N.E.2d at 157.

Am.Sub.H.B. No. 200 falls within this language and, therefore, violates Section 15(D), Article II of the Ohio Constitution to the extent that the bill incorporates Section 7. Accordingly, we sever the offending portion of the bill, see, *e.g., Livingston v. Clawson* (1982), 2 Ohio App.3d 173, 2 OBR 189, 440 N.E.2d 1383, to cure the defect and save the portions of Am.Sub.H.B. No. 200 other than Section 7 which do relate to a single subject. We hold Section 7 invalid such that its terms cannot be applied to Hinkle. Hinkle has thus established that the board of elections has a clear duty not to reject his petition for the reason that the petition must comply with current R.C. 4301.01(B)(19).

## Fraud, Laches and Standing

To show that Hinkle's November 2, 1990 petition is invalid for fraud notwithstanding Am.Sub.H.B. No. 200, the board of elections submits that the instant ten petition papers contain the same signatures and circulator's statements as did the ten local option petition papers that Hinkle filed for the general election of last year. In *State, ex rel. Hinkle, v. Franklin Cty. Bd. of Elections* (1990), 55 Ohio St.3d 711, 563 N.E.2d 297, we denied a writ of mandamus to compel an election pursuant to this earlier petition, in part because evidence before the board suggested that Hinkle had not witnessed all the petition signatures as declared in the circulator's statements. Thus, the board argues that Hinkle's November 2, 1990 petition papers, which were apparently circulated at the same time as the earlier petition papers, suffer the same infirmity and are just as invalid.

The evidence submitted on this issue consists mainly of testimony and exhibits compiled before the instant petition was filed with the board of elections. Thus, while the evidence causes some suspicion in our minds, we do not consider it conclusive of fraud here. More importantly, our review here is limited to determining whether the board clearly disregarded the law in disapproving Hinkle's petition, *State, ex rel. Beck, v. Casey* (1990), 51 Ohio St.3d 79, 80, 554 N.E.2d 1284, 1285; our function is not to conduct an independent evaluation of the petition papers themselves. The board did not invalidate this petition due to fraud in the circulator's statement. For us to do so would supplant the board's obligation, under R.C. 4305.14(C)(1), to decide the validity of local option petitions.[1]

---

1. We are not persuaded to deny relief based on the arguments of *amici curiae* city of Westerville and Cooker Restaurant Corporation et al. ("Cooker") for the same reason. Wester-

Thus, if fraud exists in Hinkle's November 2, 1990 petition, the board of elections must make this determination. As a procedural matter, we note that the board may make this determination now, even though the deadline in R.C. 4305.14(C)(1) (sixty-six days prior to the election) has passed. We draw this conclusion from *State, ex rel. Svete, v. Geauga Cty. Bd. of Elections* (1965), 4 Ohio St.2d 16, 33 O.O.2d 139, 212 N.E.2d 420, which held, in effect, that a deadline for board approval of a petition is directory, not mandatory. There, in denying a writ of mandamus to force an election on a candidate's nominating petition that a board of elections had invalidated after the statutory deadline, we said:

"The purpose of the statute is to get the board to act promptly. It was not designed to give validity to an invalid petition where not acted upon by the board within a definite period of time. The mere failure of the board to declare the petition void within the statutory time does not render the petition valid since the statute does not state that the petition shall be valid if not declared void by the board within the time named in the statute." *Id.* at 17, 33 O.O.2d at 140, 212 N.E.2d at 421.

R.C. 4305.14(C)(1) also does not state that a petition is valid if not declared void within the statutory period. Accordingly, if evidence establishes that Hinkle's petition resulted from fraud in the circulator's statements, the board of elections here may still invalidate the petition, notwithstanding the deadline in R.C. 4305.14(C)(1).

The board of elections also asserts that Hinkle lacks standing because he is not a real party in interest. The board cites *In re Highland Holiday Subdivision* (1971), 27 Ohio App.2d 237, 56 O.O.2d 404, 273 N.E.2d 903, which describes a "real party in interest," among other ways, as "a party who is benefitted or injured by a judgment in the case." *Id.* at 240, 56 O.O.2d at 406, 273 N.E.2d at 905.

Hinkle meets this description, even though he may have circulated the instant petition for remuneration, and not out of community concern. Hinkle is to be paid for his efforts only if the local option election is held and the issues pass. As Hinkle will be more or less likely to collect on his financial

---

ville asserts that Hinkle's petition is invalid notwithstanding Am.Sub.H.B. No. 200 because Columbus Ward 61(D) and Westerville Ward 4(G) are not "contiguous" as required by the "residence district" definition in former R.C. 4301.01(B)(19). Cooker argues that Hinkle's petition is invalid notwithstanding Am.Sub.H.B. No. 200 because the petition papers do not contain enough signatures under its construction of former R.C. 4305.14. The board did not invalidate the instant petition for either reason and to accept these arguments would require us to review the petition in the first instance for these defects.

arrangement depending on the outcome of this case, he will be "benefitted" or "injured" by the judgment.

The board of elections' only remaining argument is that Hinkle did not prosecute this action promptly and that accommodating a local option election now will be extremely difficult. We, however, see no evidence of his delay. Hinkle filed his petition nearly a year ago; it was the board of elections that took no action until Herington's protest was filed on August 29, 1991. Moreover, Hinkle filed this action just one week after he was notified of the board's final decision. Laches, therefore, does not apply here.

### Conclusion

We hold that Am.Sub.H.B. No. 200, as it was enacted, violates the one-subject rule in Section 15(D), Article II of the Ohio Constitution. We also hold that Hinkle has standing, that he has not slept on his rights, and that we will not supplant the board of elections' statutory function by reviewing and invalidating Hinkle's petition for reasons other than those on which the board of elections relied. Accordingly, we grant a writ of mandamus and order the board to place upon the ballot for the November 5, 1991 general election in Columbus Ward 61(D) and in Westerville Ward 4(G) the two questions posed in Hinkle's November 2, 1990 local option petition, provided that the board does not determine that such petition is invalid for fraud or for reasons other than noncompliance with Am.Sub.H.B. No. 200. This matter is remanded to the board of elections to determine the issue of fraud, consistent with this opinion.

*Writ allowed.*

MOYER, C.J., SWEENEY, HOLMES, WRIGHT, H. BROWN and RESNICK, JJ., concur.

DOUGLAS, J., dissents.

DOUGLAS, J., dissenting. I must vigorously dissent from the opinion and the judgment of the majority. Frankly, I just cannot believe that an opinion such as this could ever emanate from this court. All I can say is, "Father, forgive them; for they know not what they do." Luke 23:34.

### I

The majority gives a recitation of the procedure and the facts of the case. What the majority fails to point out is that subsequent to the relator filing his petition[2] for a writ of mandamus, the respondent, in a perfectly proper

---

2. See R.C. 2731.04.

manner and pursuant to the Civil Rules, sought to take relator's deposition. Relator sought a protective order from this court in order to avoid the taking of his deposition. We *denied* relator's request and, in effect, ordered relator to give his deposition. On Wednesday, September 25, 1991, relator appeared for deposition at the appointed time and place. After answering a few general questions (name, address, phone number, date of birth and Social Security number), relator declined, invoking the Fifth Amendment, to answer any other questions.

Subsequently, respondent moved this court for an order dismissing, as a sanction, relator's petition on the basis of relator's failure to comply with relevant and probative factual discovery. Being guided by *Shrader v. Equitable Life Assur. Soc.* (1985), 20 Ohio St.3d 41, 20 OBR 343, 485 N.E.2d 1031, and in particular the concurring opinion of Holmes, J., as well as substantial authority from other states, I voted to dismiss relator's petition—a sanction authorized and permitted by the Civil Rules. See Civ.R. 37. Unfortunately, the majority of this court did not dismiss the action and this, then, brings us to the merits. I continue, however, to adhere to my prior decision that the only proper course of action is to dismiss this case.

## II

Time does not permit discussion of all the errors found in the majority opinion. The pointing out of just two will suffice.

## A

What does the majority say (or mean) with regard to the constitutionality of Am.Sub.H.B. No. 200?

On October 22, 1991, this court issued an order signed by the Chief Justice which states, in part, "It is ORDERED by the court that a peremptory writ of mandamus be, and the same is hereby, allowed for the reason that Am.Sub. H.B. 200 violates the one-subject provision of Section 15(D), Article II of the Ohio Constitution." There is no mention of Section 7 of the bill—only the entire Act is referenced and the *Act* is found unconstitutional as being in violation of Section 15(D), Article II of the Ohio Constitution.

Given that authoritative and unambiguous assertion, I turn now to today's majority opinion. The majority first says that "Am.Sub.H.B. No. 200 falls within this language and, therefore, violates Section 15(D), Article II of the Ohio Constitution *to the extent that the bill incorporates Section 7. Accordingly, we sever the offending portion of the bill * * *.*" (Emphasis added.) The majority then holds Section 7 invalid. However, later, in the "conclusion"

section of the opinion, the majority says: "We hold that Am.Sub.H.B. No. 200, as it was enacted, violates the one-subject rule in Section 15(D), Article II of the Ohio Constitution. * * *" No mention is made of Section 7. The whole Act is found unconstitutional in this law-announcing paragraph.

Thus, on October 22, 1991, the majority says the whole Act is unconstitutional. Then, in the majority opinion of today, halfway through, only Section 7 is found unconstitutional. Finally, in the ultimate conclusion of the majority, the whole Act is again found to be unconstitutional. What will the bench, the bar and the litigants think our opinion means? Maybe there is something in there for everybody—but that is not the way pronouncements from this court should emanate.

## B

Even more egregious is the merit decision itself. The majority should remember that this opinion will be the basis upon which bills that violate the one-subject rule will be judged in the future. It will be a race to this court by parties seeking to uphold their portion of a bill while asking us to find another portion of the bill unconstitutional, when the one-subject rule is violated. Who is to choose the more favored provision(s)? Why the Justices, of course. How can there be any certainty or reliability when such a procedure is followed?

Further, the majority decision is just plain wrong on at least two other counts. The majority quotes from *State, ex rel. Dix, v. Celeste* (1984), 11 Ohio St.3d 141, 11 OBR 436, 464 N.E.2d 153. *Dix* at 145, 11 OBR at 440, 464 N.E.2d at 157, says that "* * * an *act* which contains such unrelated provisions must necessarily be held to be invalid in order to effectuate the purposes of the rule." (Emphasis added.) *Dix* says the *Act* is invalid—not a portion of the Act—but the Act! Good reason exists for this, of course, as stated *supra.* Also, the purpose of the constitutional provision is to prevent "logrolling." The majority, by its decision, permits part of the logs to roll. How can this be supportable jurisprudence?

Finally, how does the majority know which part of the Act is defective? The Act is a promulgation of the General Assembly in package form. Can we break into the package and excise what we perceive (or want to be) the offending part?

Take just one simple example. There is an empty quart bottle. We fill the bottle to a level of two-thirds with skim milk. We then add, filling the other one-third of the bottle, whole milk. What part is contaminated or not pure? Would it be the skim milk or the whole milk? Or would it be, as I believe, the

entire contents because no longer do we have just skim milk or just whole milk.

The same is true of Am.Sub.H.B. No. 200. Is it the portion of the bill that creates several judgeships around the state that is defective or is it the portion that deals with local option elections? With judges deciding this case, it is not difficult to predict who wins. But what about the interests of *amicus curiae* city of Westerville whose citizens obviously desire to retain what they have long perceived and practiced as an asset and privilege of their community—the right of being "dry." No consideration is given those persons or their interests.

Nor is any consideration given to *amici curiae* Cooker Restaurant Corporation, Schmidt's Sausage Haus, The Beer and Wine Shop and Flags Beer, Wine and Deli. The inequity to the residents and permit holders in Columbus Ward 61(D) is apparent. These permit holders stand to lose their businesses. Yet, their interests are sacrificed on the altar of expediency because a majority of this court wants to protect (a goal, incidentally, I strongly support) the establishment of new judgeships.

Secondly, to support its position of severability, the majority cites *Livingston v. Clawson* (1982), 2 Ohio App.3d 173, 2 OBR 189, 440 N.E.2d 1383, a well-reasoned court of appeals' opinion authored by the very highly respected Judge James A. Brogan of the Second District Court of Appeals. The only difficulty with the citation of authority is that the majority should have read the case. The case interprets Sections 20 and 26 of Article II of the Constitution of Ohio and has nothing to do with Section 15(D) of Article II of the Constitution of Ohio. The majority would have been better off citing R.C. 1.50, the general severability provision, even though it is also clearly inapplicable.

What is so sad is that all of this is so unnecessary. We should not bastardize the law in order to reach a desired and predetermined result. We should follow the law as we and others before us have done by dismissing relator's petition on the ground that he brought the action and now he refuses to follow the rules and give the other side the right of discovery.

Because the majority does not do this, I must dissent.