JOURNAL ENTRY AND OPINION
{¶ 1} Deangelo Benjamin appeals from a Cuyahoga County Court of Common Pleas jury verdict finding him guilty of possession of drugs. Benjamin assigns the following as errors for our review:
 {¶ 2} "Prejudicial error was committed by the admission of `otheracts' testimony in violation of R.C. 2945.59 and Evid.R. 404(B), and Mr.Benjamin's rights under Article I, Section 16 of the Ohio Constitutionand the Fourteenth Amendment to the United States Constitution.
 {¶ 3} "Mr. Benjamin was denied his constitutional rights when thetrial court proceeded to instruct the jury on `flight', despite defensecounsel's objections.
 {¶ 4} "The trial court erred by denying Mr. Benjamin's motion formistrial, thereby requiring the jury to continue deliberating after theyindicated that they were deadlocked at `10 to 2', and then `11 to 1',after two days of deliberation.
 {¶ 5} "Mr. Benjamin's conviction is against the manifest weightof the evidence."
 {¶ 6} After reviewing the evidence and the pertinent law, we affirm the judgment of the trial court. The apposite facts follow.
 {¶ 7} On February 14, 2001, a grand jury indicted Benjamin for possession of drugs in violation of R.C. 2925.11, preparation of drugs for sale in violation of R.C. 2925.07, and possession of criminal tools in violation of R.C. 2923.24.
 {¶ 8} On October 15, 2001, the matter proceeded to trial in the court of common pleas. Prior to presenting witnesses, the State requested the court's permission to introduce a glass PCP vial allegedly thrown by Benjamin. This vial tested positive for PCP, but was not the subject of an indictment. Over defense counsel's objection that the vial constituted impermissible "other acts" evidence, the trial court granted the prosecution's request, but later excluded the vial and any testimony pertaining to it.
 {¶ 9} At trial, Cleveland Police Officer Gordon Holmes testified that on December 16, 2000, he was a member of the Fresh Start Unit, a specialized unit designed to enter Cleveland's high crime areas and address citizens' complaints concerning drug activity in their neighborhoods.
 {¶ 10} The Fresh Start Unit received several complaints about drug activity at 2535 East 38th Street in the Longwood Estates, including a complaint on the evening of December 16, 2000, to which Sergeant Holmes and Officer Tim Grafton responded. Upon their arrival, Sergeant Holmes opened a door to the apartment building and observed Benjamin and co-defendant Sterling Manning engaged in what Sergeant Holmes described as a hand-to-hand drug transaction.
 {¶ 11} Sergeant Holmes testified that when he and Grafton entered the building, Benjamin ran up two flights of stairs. Sergeant Holmes followed Manning, who was arrested by two police officers waiting outside the back door. Sergeant Holmes then returned to assist Officer Grafton, who was searching Benjamin for weapons.
 {¶ 12} Officer Grafton testified he was the second person through the door and did not see a hand-to-hand transaction. Grafton further stated that when he entered the hallway, Benjamin had his back to him. As Benjamin turned to run up the stairs and away from Officer Grafton, he saw Benjamin drop a vial. Officer Grafton pursued Benjamin up the stairs and ordered him back down so he could speak with him.
 {¶ 13} Officer Grafton stated he opened the dropped vial and discovered a bag of purported crack cocaine. At some point, Officer Grafton heard the sound of glass hitting the floor and retrieved a second vial.
 {¶ 14} The officers arrested Benjamin and transported him via a police vehicle to the Central Prison Unit. Upon arrival, they removed Benjamin from the vehicle and discovered a second bag of purported crack cocaine. Both officers testified they searched the police vehicle prior to transporting Benjamin and did not discover any drugs.
 {¶ 15} Erica Walker, a scientific examiner for the Cleveland Police Department, analyzed the substances found in the police car and in the vials. Each tested positive for crack cocaine in amounts of 9.06 grams, 5.30 grams, and 2.29 grams.
 {¶ 16} Benjamin testified on his own behalf. He stated that on the night in question he was at the Longwood Estates visiting his brother's girlfriend, Shalya Williams, who lived on the first floor. He stated he was in the hallway smoking a cigarette when he saw the officers enter the building with their guns drawn. Fearing he would be shot by a stray bullet, he walked up to the third floor. He testified he did not have drugs on him that night, denied throwing a vial, and denied removing drugs from his person while in the police car.
 {¶ 17} After the close of evidence, the court granted Benjamin's motion for a directed verdict on the charge of possessing criminal tools. Thereafter, over Benjamin's objection, the trial court instructed the jury on, inter alia, flight from justice.
 {¶ 18} The jury received the matter for deliberations during the morning session on October 17, 2001. Later that day, the jury foreman informed the court that the jury had reached a verdict on one of the counts, but was deadlocked with respect to the other. At this point, the trial court read the Howard charge to the jury.[1]
 {¶ 19} On the following day, the jury sent a written comment to the judge stating, "The jury is having difficulty coming to a unanimous decision for [drug possession]. The jury is at a 10 to 2 standstill at this point. What should we do?" Approximately one and one-half hours later, the jury sent another written communication to the judge stating, "Upon further discussion, the jury is now at an 11 to 1 standstill [on drug possession]. Just an update." The court instructed the jury to continue deliberating.
 {¶ 20} Thereafter, defense counsel moved for a mistrial due to the two days of deliberation and the apparent pressure being placed on the one juror. The court denied the motion.
 {¶ 21} On the third day, the jury again informed the judge of their inability to reach a unanimous decision. The court instructed them to continue deliberations. The jury then returned a guilty verdict on count one, possession of drugs, and not guilty on count two, preparation of drugs for sale. The court sentenced Benjamin to a two-year term of incarceration. This appeal followed.
 {¶ 22} In his first assigned error, Benjamin alleges the trial court committed prejudicial error when it allowed testimony regarding the glass PCP vial that was not the subject of an indictment because it constituted impermissible "other acts" evidence. He claims he was prejudiced, even though the court ultimately excluded testimony regarding the vial, because the jury had already heard about it and the State cross-examined about it even after the exclusion.
 {¶ 23} "The admission or exclusion of relevant evidence rests within the sound discretion of the trial court."[2] Accordingly, we proceed under an abuse of discretion standard. "The term `abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable * * *."[3]
 {¶ 24} Evid.R. 404(B) provides, "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 25} In the instant case, the trial court initially permitted limited testimony regarding the PCP vial; however, the trial court cured its mistake by ultimately excluding the evidence stating it might be more prejudicial than probative.
 {¶ 26} Nonetheless, Benjamin argues the initial admission tainted the jury and resulted in undue prejudice against him. We disagree.
 {¶ 27} An error in the admission or exclusion of evidence is properly considered harmless error if it does not affect a substantial right of the accused.[4] Benjamin has failed to produce any evidence to convince this court that the jury considered the PCP vial during deliberations or that it relied at all on the vial when it found him guilty of possession. Further, the evidence arrayed against Benjamin is substantial. Even without testimony about the PCP vial, a reasonable jury could conclude Benjamin was guilty of possessing drugs. Thus, the initial admission of the PCP vial did not affect a substantial right of Benjamin and merely amounted to harmless error. Accordingly, Benjamin's first assigned error is without merit.
 {¶ 28} In his second assigned error, Benjamin claims the trial court erred when it instructed the jury on flight from justice. We disagree.
 {¶ 29} The decision whether to issue an instruction on "flight" rests within the sound discretion of the trial court.[5] Absent an abuse of discretion, the trial court's decision will not be reversed on appeal.[6]
 {¶ 30} A reviewing court may not judge a single instruction to the jury in artificial isolation.[7] Rather, in determining whether a jury instruction constituted prejudicial error, an appellate court must determine, from the record, whether such instruction may have resulted in a manifest miscarriage of justice.[8]
 {¶ 31} Flight from justice "means some escape or affirmative attempt to avoid apprehension."[9] It is well established that evidence of flight is admissible as tending to show consciousness of guilt.[10] Thus, a trial court does not abuse its discretion by issuing an instruction on flight if sufficient evidence exists in the record to support the charge.[11]
 {¶ 32} In this case, Benjamin testified he "walked" up the stairs when the officers entered the building, and the officers testified Benjamin "ran" up two flights of stairs. Even though the testimony of the officers and Benjamin contradict regarding whether Benjamin "walked" or "ran" up the stairs, the distinction is meaningless. The evidence establishes Benjamin vacated the entryway and proceeded up the stairs immediately after noticing the officers enter the building. On this record, sufficient evidence exists to support a charge of flight. Accordingly, Benjamin's second assigned error is without merit.
 {¶ 33} In his third assigned error, Benjamin alleges the trial court erred by requiring the jury to continue deliberations after receiving notice that they were deadlocked. We disagree.
 {¶ 34} It is a well-settled principle that the law encourages jurors to agree, not to deadlock, and a court may urge a jury to make a reasonable effort to reach a verdict.[12] A trial court should issue the Howard charge when it determines the jury is deadlocked in its decision; however, no bright line exists to determine when a jury is deadlocked and when the supplemental charge should be read to the jury.[13]
 {¶ 35} In State v. Howard, the Ohio Supreme Court rejected the traditional charge to deadlocked juries as set forth in the very early case of State v. Allen,[14] finding the Allen charge was unduly coercive to members of the jury in the minority position. Thus, the supreme court supplanted the Allen charge with the Howard charge, which asks each juror to review his or her own position.
 {¶ 36} In this case, the trial court gave the Howard charge after the jury announced they reached a verdict regarding the first count but not on the second count. The instruction was given the same day the jury received the matter for deliberations.
 {¶ 37} Benjamin has failed to provide evidence that the Howard
charge was prejudicial. To the contrary, the trial court merely encouraged the jury to reach a verdict in a manner well within the spirit of our judicial system. As such, we find no error and overrule Benjamin's third assigned error.
 {¶ 38} In his final assigned error, Benjamin argues his conviction was against the manifest weight of the evidence. We disagree.
 {¶ 39} Regarding the manifest weight of the evidence, the court inState v. Martin[15], stated, "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."[16]
 {¶ 40} Additionally, the court in State v. Thompkins[17], stated, "Weight of the evidence concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them."[18]
 {¶ 41} Further, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact.[19]
 {¶ 42} In this case, Sergeant Holmes testified that upon entering the building, he witnessed a hand-to-hand transaction which he believed to be a drug deal. He pursued Manning while his partner, Officer Grafton, pursued Benjamin up two flights of stairs and ordered him back down for questioning. Officer Grafton testified Benjamin dropped a vial which contained crack cocaine. He further stated that upon Benjamin's exit from the police car, he discovered a plastic bag which also contained crack cocaine.
 {¶ 43} After reviewing the entire record in this case, weighing the evidence and all reasonable inferences and considering the credibility of the witnesses, we cannot conclude that in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that a new trial is in order. Accordingly, this assigned error is without merit.Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TIMOTHY E. McMONAGLE, A.J., and COLLEEN CONWAY COONEY, J., CONCUR.
[1] See, State v. Howard (1989), 42 Ohio St.3d 18 (articulating a charge to be read to a deadlocked jury).
[2] State v. Sage (1987), 31 Ohio St.3d 173, paragraph two of the syllabus.
[3] State v. Adams (1980), 62 Ohio St.2d 151, 157. (Citations omitted).
[4] Civ.R. 61.
[5] State v. Soto (Jan. 22, 1998), Cuyahoga App. No. 72062.
[6] State v. Sims (1984), 13 Ohio App.3d 287.
[7] State v. Gee (June 2, 1994) Cuyahoga App. Nos. 64410, 64411.
[8] State v. Adams (1980), 62 Ohio St.3d 151.
[9] State v. Wesley, Cuyahoga App. No. 80684, 2002-Ohio-4429, citingUnited States v. Felix-Gutierrez (C.A.9, 1991), 940 F.2d 1200,1207.
[10] State v. Richey (1992), 64 Ohio St.3d 353.
[11] See United States v. Dillon (C.A.6, 1989), 870 F.2d 1125;State v. Hambrick (Feb. 1, 2001), Cuyahoga App. No. 77686.
[12] State v. Long (Oct. 12, 2000), Cuyahoga App. No. 77272, citingState v. Sabbah (1982), 13 Ohio App.3d 124.
[13] Long, supra.
[14] (1896), 164 U.S. 492.
[15] (1983), 20 Ohio App.3d 172.
[16] Id. at paragraph three of the syllabus.
[17] (1997), 78 Ohio St.3d 380.
[18] Id. at 387, (Emphasis and quotation omitted).
[19] State v. DeHass (1967), 10 Ohio St.2d 230.