THE STATE, EX REL. SNYDER, *v.* STATE CONTROLLING BOARD.

(No. 83AP-618—Decided December 22, 1983.)

*Mr. Frank Macke,* for relator H. Cooper Snyder.

*Mr. Anthony J. Celebrezze, Jr.,* attorney general, and *Ms. Kathleen McManus,* for respondent State Controlling Board.

REILLY, J. Respondent has moved to dismiss this mandamus action for failure to state a claim upon which relief can be granted. The parties have stipulated a brief statement of facts, as follows:

"1. The parties agree that Relator, H. Cooper Snyder, is a citizen and resident-taxpayer of the State of Ohio; and further that he is the duly qualified, elected and acting member of the Ohio General Assembly serving in the Ohio State Senate as the State Senator from the Fourteenth Senatorial District.

"2. The parties further agree and stipulate that Clermont County General Technical College is a branch of the University of Cincinnati, a state supported institution of higher education organized and existing pursuant to R.C. Chapter 3361, and is located in Batavia, Ohio, within the Fourteenth Senatorial District.

"3. The parties agree that on March 31, 1981 Senator Snyder, at the request of the University of Cincinnati, Clermont

County General Technical College, recommended the insertion of a $4.5 million dollar line item into the Capital Appropriations Bill (H.B. 552) then being considered by the Ohio Legislature. * * * Stated purpose for such appropriation was for the construction of a new technical classroom and laboratory building.

"4. The parties further agree that House Bill 552 was formally introduced into the Ohio House of Representatives on May 19, 1981 and that the bill as introduced contained appropriation No. 265-053 in the amount of $4.5 million dollars for the construction of a classroom/laboratory building, and that the total amount of capital appropriations for the University of Cincinnati in the bill, as introduced was $79,455,000. On June 3, 1981 Amended Substitute House Bill 552 was passed by the Ohio House of Representatives containing $79,455,000 in total capital appropriations for the University of Cincinnati. This amended bill, as passed by the House, contained a reduced appropriation totalling $500,000 for No. 265-053, the Clermont branch classroom/laboratory building. * * *

"5. On November 19, 1981 the Capital Improvements Bill was introduced in the Ohio Senate, and there, on the floor of the Senate, Relator successfully moved to amend the bill to include a $4.5 million dollar appropriation for the University of Cincinnati, Clermont branch, classroom/laboratory building. The bill as amended passed the Senate, the amendments were concurred by the House, and on November 24, 1981 the Capital Improvements Bill was signed into law by Governor James A. Rhodes. * * * The bill in its final form contained appropriations for the University of Cincinnati, of which Clermont County General Technical College is a part, totalling $84,645,000. * * *

"6. The parties further agree that the construction of the classroom/laboratory building at Clermont County General

Technical College remained a priority item for the University of Cincinnati at least through February, 1982, and to that end, $250,000 of the monies appropriated for the project were released for design and planning in April, 1982. * * *

"7. The parties further agree that on April 4, 1983 the University of Cincinnati requested the Controlling Board to transfer the remaining funds appropriated for the construction of the Clermont branch classroom/laboratory building to a new project for the renovation of Sander Hall at the University of Cincinnati main campus. On April 11, 1983 the Controlling Board approved the request. Relator objected to the action of the Controlling Board in that he had not been given notice of the request as provided by law. No action was taken as a result of the Controlling Board's action of April 11, 1983. The request to the Controlling Board was resubmitted on June 13, 1983, notice was given to the elected representatives of the counties affected by the transfer, and the request was approved by the Controlling Board on July 5, 1983. * * *

"8. The action taken by the Controlling Board was initiated by the University of Cincinnati and was not initiated or recommended by the Ohio Board of Regents. * * *

"9. The parties further stipulate that since the enactment of Am. Sub. H.B. 552 to the present the Controlling Board has approved a total of thirty-one (31) separate requests from state supported institutions of higher education for transfers of funds between capital improvement items. * * *"

Respondent's motion to dismiss is well-taken. Relator is seeking a writ of mandamus to compel respondent to immediately void the transfer of the appropriation from the Clermont Branch classroom/laboratory building to the Sander Hall renovation.

It is noteworthy that a capital improvement appropriation is an authorization rather than a mandate to expend

funds for a particular purpose. R.C. 131.31(D). The inclusion of the Clermont Branch building item in Am. Sub. H.B. No. 552 imposed no duty on the University of Cincinnati to expend such appropriation. It did not limit the university's discretion to further evaluate the merits of that particular project or determine that subsequent events had changed the priority or had qualified the need for the project. Thus, even if this court would find relator's claim meritorious and grant the requested writ of mandamus, the university would have no duty to proceed with the Clermont Branch building.

Moreover, the exercise of respondent's authority under R.C. 127.15 includes the exercise of its judgment and discretion which cannot be limited or controlled by a writ of mandamus. *State, ex rel. Armstrong,* v. *Davey* (1935), 130 Ohio St. 160 [4 O.O. 38]; *State, ex rel. Little,* v. *Carter* (1924), 111 Ohio St. 526.

Further, it is necessary that relator must have a beneficial interest to maintain this action in mandamus. R.C. 2731.02; *State, ex rel. Moskowitz,* v. *Dickerson* (1961), 172 Ohio St. 551 [18 O.O.2d 91]; *State, ex rel. Harris,* v. *Silbert* (1959), 169 Ohio St. 261 [8 O.O.2d 278]; *State, ex rel. General Contractors Assn.,* v. *Wait* (1958), 168 Ohio St. 5 [5 O.O.2d 258]; *State, ex rel. Skilton,* v. *Miller* (1955), 164 Ohio St. 163 [57 O.O. 145]; *State, ex rel. Stanley,* v. *Cook* (1946), 146 Ohio St. 348 [32 O.O. 419]; *State, ex rel. Brophy,* v. *Cleveland* (1943), 141 Ohio St. 518 [26 O.O. 87]. Hence, if the petition does not set forth specific facts showing the relator to be a "party beneficially interested," as required by R.C. 2731.02, relator has not stated a proper claim for relief in mandamus. *State, ex rel. Skilton.* This requirement was interpreted by the Supreme Court in the first paragraph of the syllabus in *State, ex rel. Brophy,* as follows:

"Where no legal right of a person can be affected by the failure of public officials to act in any given matter, he has no such beneficial interest as will permit him to maintain an action in mandamus against them to require official action in such matter."

The complaint in this case alleges that relator is a citizen and a taxpayer of the state of Ohio, as well as a state senator from the Fourteenth District. The complaint, however, does not include facts supporting a conclusion that relator has a beneficial interest in the expenditure of the Am. Sub. H.B. No. 552 appropriation for the Clermont Branch classroom/laboratory building. Relator has alleged no legal right as a citizen of Ohio that will be affected by the transfer of this appropriation item. Further, relator has no legal right, or duty, as a state senator that is affected by this transfer. Although relator has a legal right to participate in the legislative process that resulted in the enactment of H.B. 552, he fully exercised such right and has no continuing legal right to preserve that appropriation intact or to preclude its transfer in accordance with R.C. 127.15.

Relator's capacity to maintain this action is also improperly predicated on his status as a taxpayer. In order to maintain a taxpayer's action to either enjoin illegal conduct or compel legal conduct two prerequisites must be established. First, the funds involved must have been derived from some type of taxation and, second, if such funds are found to be tax funds, the relator must have a special interest therein. *State, ex rel. Masterson,* v. *Ohio State Racing Comm.* (1954), 162 Ohio St. 366 [55 O.O. 215].

Neither of these prerequisites is established in this case. The appropriation involved was not made from general revenue funds but out of funds held in the state treasury to the credit of the Higher Education Improvement Fund pursuant to R.C. 154.21(F). The Higher Education Improvement Fund is comprised essentially of the proceeds of the sale of higher education obligations.

Furthermore, even assuming the money supporting the Am. Sub. H.B. No. 552 appropriation could be established to include tax funds, relator could not state a proper claim for relief because of the determinations in *State, ex rel. Masterson, supra,* and *Andrews* v. *Ohio Building Authority* (App. 1975), 74 O.O. 2d 184, that plaintiff, as a general taxpayer, must show the action complained of has affected the plaintiff's pecuniary interests differently than the interests of the general taxpaying public. Hence, relator must show that "he has some special interest * * * by reason of which his own property rights are put in jeopardy." *State, ex rel. Masterson,* at 368.

The complaint does not include any allegations supporting a conclusion that relator has a requisite beneficial interest to maintain a mandamus action.

For the foregoing reasons, the motion to dismiss is sustained.

*Motion to dismiss sustained.*

STRAUSBAUGH, J., concurs.

WHITESIDE, J., concurs separately.

WHITESIDE, P.J., concurring. Although I concur in the judgment of dismissal because R.C. 127.15 specifically permits the very type of change of purpose of capital appropriations and in the manner accomplished here, I do not concur in that portion of the decision finding relator not to have standing. R.C. 127.15 confers standing upon relator even if he had no other basis for standing by making him one entitled to notice and hearing with respect to transfers of capital appropriations from one purpose to another.