WASHINGTON COUNTY TAXPAYERS ASSOCIATION et al., Appellants,

v.

PEPPEL, Treas., et al., Appellees.

[Cite as *Washington Cty. Taxpayers Assn. v. Peppel* (1992), 78 Ohio App.3d 146.]

Court of Appeals of Ohio,
Washington County.

No. 91CA17.

Decided Jan. 23, 1992.

148

*Robert L. Hausser* and *William J. Christensen,* for appellants.

*Roland W. Riggs III,* Marietta City Law Director, for appellees.

*Lee Fisher,* Attorney General, and *Patrick A. Devine,* Assistant Attorney General, urging affirmance for *amicus curiae,* Lee Fisher, Ohio Attorney General.

---

STEPHENSON, Presiding Judge.

This is an appeal from a judgment entered by the Washington County Court of Common Pleas granting a summary judgment to appellees and dismissing

the action filed against them by appellants.[1] Appellants assign the following errors:

"1. The court of common pleas erred in holding that the sole remedy available to plaintiffs [in asserting the failure of the Marietta City Board of Education to obtain the consents of the Superintendent of Public Instruction and of the State Tax Commissioner before submitting the bond issue to the electors, and prior to thirty days before the election, as required by division (C) of R.C. 133.06] was by petition filed with the clerk of the court of common pleas within fifteen days after the result of the election was ascertained and announced, as specified in R.C. Section 3519.09 [*sic*].

"2. The court erred in holding that the consents of the Superintendent of Public Instruction and the State Tax Commissioner before the Marietta City Board of Education might submit the bond issue [the passage of which would make the district's net indebtedness (after the issuance of the securities) exceed an amount equal to four percent of its tax valuation] were procedural in nature, rather than substantive; so that the failure to obtain the consents was cured by the passage of Amended Substitute House Bill 61 of the 119th General Assembly.

"3. The court erred in holding that the passage of Am.Sub.H.B. 61 on March 14, 1991 [intended to cure the failure of the Marietta City Board of Education to obtain the consents of the two state officers before submitting the bond issue to the electors] was not retroactive in nature, hence did not violate the Ohio Constitution, Section 28 prohibiting such retrospective laws.

"4. The court erred in holding that Am.Sub.H.B. 61 did not deprive plaintiffs of any property rights, hence did not deprive them of any property rights without due process.

"5. The court erred in holding that the disparate and unrelated subjects contained in Am.Sub.H.B. 61 did not violate the Ohio Constitution, Article II, Section 15, providing that '(D) No bill shall contain more than one subject which shall be clearly expressed in its title.'

"6. The court erred in holding that the plaintiffs-appellants have failed to sustain their burden in challenging the constitutionality of Am.Sub.H.B. 61."

---

1. The defendants below, and appellees herein, were the Treasurer and Auditor of Washington County, the Marietta City Board of Education, as well as its Treasurer, and the Superintendent of the City School District. The plaintiffs below, and appellants herein, were, among others, an unincorporated association of resident property owners and taxpayers in the Marietta City School District and two individual real property owners and taxpayers of that district.

■ The record reveals the following facts pertinent to this appeal. On November 6, 1990, voters residing in the Marietta City School District approved, by majority vote, a bond issue in the principal amount of $10,320,000 with proceeds therefrom to be used for general improvements to school facilities within the school district. The bond issue was to be repaid over a maximum of fifteen years with such repayment to be funded by a real property tax levy, outside the ten-mill limitation, to average 4.64 mills for each one dollar of valuation, or $0.464 for each one hundred dollars of valuation.[2]

■ On February 17, 1991, appellants commenced the action below seeking both a declaratory judgment that the bond issue and tax levy were invalid and a permanent injunction to prevent implementation of the same.[3] The averments giving rise to this action were that the bond issue caused the school district's net indebtedness to exceed an amount equal to four percent of the tax valuation thereof. Appellants further alleged that, under such circumstances, appellee, Marietta City Board of Education, was required to procure supervisory permission under R.C. 133.06(C) before submitting the bond issue to the voters. Appellants averred that such supervisory permission had not been obtained prior to the election and, therefore, the bond issue should be withdrawn and decertified.

On March 14, 1991, before any of the appellees had filed an answer to the Complaint, the Ohio General Assembly enacted Am.Sub.H.B. No. 61 (see [1991] Baldwin's Ohio Legislative Service 5–4 through 5–6), which provides, in pertinent part, as follows:

"SECTION 3. In any case in which the Superintendent of Public Instruction determines that because of ministerial error or oversight the consents of that Superintendent and the Tax Commissioner contemplated by division (C) of

---

2. The "ten-mill limitation" provides that no taxing unit may levy taxes on property in any one year exceeding ten mills on each dollar of tax valuation of such taxing unit except for those taxes specifically authorized to be in excess thereof. R.C. 5705.02; see, also, Section 2, Article XII, Ohio Constitution.

3. Appellants commenced the action below in their capacity as taxpayers which would be subject to the real property tax levy accompanying the bond issue. In order to have standing to maintain an action to enjoin illegal conduct, a taxpayer must ordinarily show that such conduct affected his pecuniary interests differently than the interests of the general taxpaying public. See *State ex rel. Snyder v. State Controlling Bd.* (1983), 11 Ohio App.3d 270, 272–273, 11 OBR 449, 451–452, 464 N.E.2d 617, 619–621. However, Ohio law has long held that a taxpayer generally has the right to contest the creation of an illegal public debt which the taxpayer, in common with other property holders of the taxing district, may otherwise be compelled to pay. 88 Ohio Jurisprudence 3d (1989) 69, Taxpayers Action, Section 55. Furthermore, a taxpayer may properly seek an injunction to prevent the levying or collection of taxes to pay on account of invalid securities. *Id.* at 70; see, also, 77 Ohio Jurisprudence 3d (1987) 374, Public Securities, Section 133. Accordingly, the appellants herein had standing to commence the action below.

section 133.06 of the Revised Code were not requested by a school district and therefore were not given prior to an election held on November 6, 1990, those consents shall be considered to have been given if the school district requests the consents, the Superintendent of Public Instruction and the Tax Commissioner each certifies that there is no reason that consent, had it been requested, would not have been given prior to the election, and those consents are now given. The provisions of this section shall apply notwithstanding anything to the contrary in division (C) of section 133.06 of the Revised Code or related policies or rules, and shall apply to those elections and related consents, and to the proceedings relating to those elections and to the issuance of the bonds or notes issued in anticipation of those bonds approved by a majority of the voters of the school district at those elections.     * * * "[4]

On March 18, 1991, appellants moved for leave to file a supplemental complaint pursuant to Civ.R. 15(E) in order to challenge the constitutionality of Am.Sub.H.B. No. 61. Such leave was, subsequently, granted and on March 20, 1991, appellants filed their supplemental complaint. This pleading incorporated all allegations and prayers for relief as were set forth in the original complaint and, additionally, sought to have Am.Sub.H.B. No. 61 declared unconstitutional. In support of that request, appellants alleged that Section 3 of that legislation was passed in order to "cure the defects and insufficiencies of the Marietta City School District election of November 6, 1990." Appellants further averred that the enactment was unconstitutional because it was discriminatory, retroactive, "extinguished a vested legal relation" and contained more than one subject matter. Appellees filed their answers denying all allegations of invalidity and further contending that the action should be dismissed for, among other reasons, mootness and the operation of the statute of limitations applicable to election contests under R.C. 3515.09.

■ On April 15, 1991, a motion for summary judgment was filed on the grounds that, as a matter of law, appellants' complaint failed to state a claim upon which relief could be granted and, therefore, it should be dismissed.[5] First, appellees argued that the only permissible method by which appellants could have challenged the bond issue was through an election contest action which could only be commenced within fifteen days after the election results had been ascertained. See R.C. 3515.08 and 3515.09. Appellees attached, as an exhibit, evidence that the bond election had been officially announced by

---

4. It would appear undisputed that such consents were, subsequently, given.

5. The motion for summary judgment was made by three of the five appellees joined as party defendants below. Nevertheless, because the judgment of the trial court dismissed the complaint with respect to all party defendants, we hereinafter consider this motion as if it had been made by all appellees.

the Washington County Board of Elections on November 20, 1990, and no election contest had been filed within fifteen days after the election. Thus, appellees concluded, appellants were outside the permitted time frame to challenge the bond issue through an election contest and were further foreclosed from any other method to challenge it. Appellees also argued that the curative legislation enacted as part of Am.Sub.H.B. No. 61 rendered moot all of appellants' claims.

Appellants filed their memorandum contra summary judgment and argued, in essence, that the curative legislation enacted by the Ohio General Assembly was unconstitutional and, therefore, incapable of eliminating any defects or irregularities which occurred in submitting the bond issue to the voters in Washington County. Further, appellants argued that they were not limited to an election contest action as the sole method by which to challenge that issue. Thus, appellants concluded, the motion for summary judgment should be denied.

On June 5, 1991, the court rendered its decision and found that any defect in obtaining consent before placing the bond issue to the voters of Washington County was cured by the passage of Am.Sub.H.B. No. 61. The court further ruled that such legislation was valid and constitutional. A judgment entry to that effect was entered on June 13, 1991, and this appeal followed.

■ In their first assignment of error, appellants argue that the trial court erred in holding that the sole remedy available for them to challenge the bond issue below was through an election contest action brought pursuant to R.C. Chapter 3515. However, after reviewing the record, we cannot ascertain that the trial court ever made such a ruling. Indeed, the judgment entered below is silent with respect to this issue and the court's decision reveals the following:

"*This court is not convinced* by defendants' [appellees'] argument that Section 3515.08 O.R.C. *et seq.* constitutes the sole and exclusive method of raising the issue of a defective election." (Emphasis added.)

■ Thus, notwithstanding appellants' assertion to the contrary, it does not appear that the trial court confined them to an election contest action as the sole method by which to challenge the bond issue. If it had, the trial court would have dismissed the action for being outside the permissible time limit of R.C. 3515.09 and would have had no need to even reach the constitutionality of the curative legislation.[6] In that such a ruling does not appear to have been

---

6. It is well settled that a court will not consider constitutional questions until the necessity for such a decision arises. *Hal–Artz Lincoln Mercury, Inc. v. Ford Motor Co.* (1986), 28 Ohio St.3d 20, 28 OBR 83, 502 N.E.2d 590, at paragraph two of the syllabus; *State ex rel.*

made below, the issue is not properly before us at this time. *State v. Newberry* (1991), 77 Ohio App.3d 818, 820, 603 N.E.2d 1086, 1088, fn. 1; *State v. Howard* (Feb. 25, 1991), Scioto App. No. 89CA1840, unreported, at 5, 1991 WL 28326. Accordingly, the first assignment of error is overruled.

We shall jointly address appellants' remaining five assignments of error as they all challenge the validity and constitutionality of the curative legislation passed as part of Am.Sub.H.B. No. 61. It is undisputed that this Act was passed to alleviate the failure to comply with the following provisions of R.C. 133.06(C):

"A school district shall not submit to a vote of the electors the question of the issuance of securities in an amount that will make the district's net indebtedness after the issuance of the securities exceed an amount equal to four per cent of its tax valuation, unless the superintendent of public instruction, acting under policies adopted by the state board of education, and the tax commissioner, acting under written policies of the commissioner, consent to the submission. A request for the consents shall be made at least thirty days prior to the election at which the question is to be submitted."

Appellants offer a number of arguments to the effect that the relief from compliance with this provision, as granted in Am.Sub.H.B. No. 61, is invalid and constitutionally infirm and does not alleviate the defect caused by the failure to obtain supervisory permission before submitting the November 6, 1990 bond issue to the voters. We disagree.

■ We begin our analysis from the premise that all legislative enactments enjoy a presumption of validity and constitutionality. See *State ex rel. Petroleum Underground Storage Tank Release Comp. Bd. v. Withrow* (1991), 62 Ohio St.3d 111, 116, 579 N.E.2d 705, 709; *Sedar v. Knowlton Constr. Co.* (1990), 49 Ohio St.3d 193, 199, 551 N.E.2d 938, 944; *Hardy v. VerMeulen* (1987), 32 Ohio St.3d 45, 48, 512 N.E.2d 626, 629. Furthermore, it is well established that the burden of showing the unconstitutionality of legislation is upon the one challenging its validity. 16 Ohio Jurisprudence 3d (1979) 279, Constitutional Law, Section 148. Appellants have failed to persuade us that they met this burden below.

■ Although not entirely clear, appellants' first contention appears to be that R.C. 133.06(C) grants a substantive entitlement to "know ahead of time"

---

*Hofstetter v. Kronk* (1969), 20 Ohio St.2d 117, 119, 49 O.O.2d 440, 441, 254 N.E.2d 15, 17. Thus, when a case can be decided on another basis, the issue of legislative constitutionality will not be decided. *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 105, 522 N.E.2d 489, 494; *Wiggins v. Babbitt* (1935), 130 Ohio St. 240, 241, 4 O.O. 263, 198 N.E. 873.

the policies adopted by both the State Board of Education and the Tax Commissioner with respect to the supervisory consent to be given under that statute. However, we find nothing in the plain and unambiguous language of that statute which could be construed to grant such an entitlement. Appellants cite no authority which would support their interpretation and we are aware of none. Thus, we find no merit to the argument.

■ Appellants also argue that the provisions of Am.Sub.H.B. No. 61 were unconstitutionally retroactive and deprived them of vested property rights. We are not persuaded. Although the Ohio General Assembly has no power to pass retroactive laws, it may pass legislation curing defects and errors in proceedings which arise out of their want of conformity with state law. See Section 28, Article II, Ohio Constitution. Thus, it is well settled that the passage of curative legislation, which is retrospective in nature, is not unconstitutional so long as it does not disturb a "vested right." *State ex rel. McElroy v. A.M. Kinney, Inc.* (1960), 171 Ohio St. 193, 196, 12 O.O.2d 301, 304, 168 N.E.2d 400, 402; *State ex rel. Shafer v. Otter* (1922), 106 Ohio St. 415, 426, 140 N.E. 399, 402; *Burgett v. Norris* (1874), 25 Ohio St. 308, at paragraph four of the syllabus. Therefore, the dispositive issue herein is whether the retrospective application of Am.Sub.H.B. No. 61 infringed upon a "vested right" of the appellants.

■ A "vested right" may be created by common law or statute and is generally understood to be the power to lawfully do certain actions or possess certain things; in essence, it is a property right. See 17 Ohio Jurisprudence 3d (1980) 54–55, Constitutional Law, Sections 535 and 536. Appellants argue that the provisions of R.C. 133.06(C) were enacted to protect the electorate by providing them with an opportunity to consider the "expert advice available from the State Superintendent of Public Instruction and the State Tax Commissioner * * * as conditions precedent to the calling of the board issue election * * *." Appellants contend that they acquired a vested property right in the enforcement of that statute and that the retrospective curative provisions in Am.Sub.H.B. No. 61 deprived them of such rights. We disagree.

■ Whatever incidental benefit the electorate may have enjoyed, the provisions of R.C. 133.06 were enacted by the General Assembly to impose a policy of fiscal responsibility upon the school district and to prevent it from exceeding certain debt limits. See 1 Baker, Ohio School Law (1990) 182, Sections 5.26 and 5.27; see, also, 1965 Ohio Atty.Gen.Ops. No. 65–167, at 2–369 (interpreting prior law). Appellants have cited nothing which indicates that the General Assembly conferred, or even intended to confer, a property right or benefit upon the electorate of a school district under this statute. Indeed, we can discern nothing in R.C. 133.06(C) which provides for, or would

allow the electorate to demand, a report from either the Superintendent of Public Instruction or the Tax Commissioner with respect to the propriety of a bond issue.

Moreover, in the exercise of its plenary power, the General Assembly may enact remedial and retrospective legislation to cure and render valid that which it could have authorized in the first instance. *Burgett, supra,* 25 Ohio St. at 317. There being no serious question that the General Assembly could, if it chose to do so, repeal the provisions of R.C. 133.06(C), there should also be no question that its application could be retrospectively excused in a particular instance. Suffice it to say that, for these reasons, appellants have failed to persuade us that they acquired a vested right in the enforcement of that statute. Accordingly, we find this argument to be without merit.

Finally, appellants argue that the curative legislation of Am.Sub.H.B. No. 61 is unconstitutional because its enactment violates the so called "one subject rule" in Section 15(D), Article II of the Ohio Constitution, which provides, in substance, that no bill shall contain more than one subject which will be clearly expressed in the title. Again, we disagree.

The "one subject rule" of the Ohio Constitution is merely directory in nature. *State ex rel. Dix v. Celeste* (1984), 11 Ohio St.3d 141, 11 OBR 436, 464 N.E.2d 153, at the syllabus. It is within the discretion of the courts to rely upon the judgment of the General Assembly as to a bill's compliance with the Constitution and only a manifestly gross and fraudulent violation of this rule should cause the enactment to be invalidated. *Id.;* see, also, *ComTech Systems, Inc. v. Limbach* (1991), 59 Ohio St.3d 96, 99, 570 N.E.2d 1089, 1092. In *Hoover v. Bd. of Franklin Cty. Commrs.* (1985), 19 Ohio St.3d 1, 5, 482 N.E.2d 575, 579, the Supreme Court discussed the following standard in reviewing for a "manifestly gross and fraudulent violation" of the one subject rule:

"[E]very presumption in favor of the enactment's validity should be indulged. The mere fact that a bill embraces more than one topic is not fatal, as long as *a common purpose or relationship exists between the topics.* However, where there is a blatant disunity between topics and no rational reason for their combination can be discerned, it may be inferred that the bill is a result of log-rolling—the practice by which several matters are consolidated in a single bill for the purpose of obtaining passage for proposals which would never achieve a majority if voted on separately. This is the very practice which Section 15(D) was designed to prevent." (Emphasis added.)

With this standard in mind, we turn to the provisions of Am.Sub.H.B. No. 61. Appellants contend that because sections one and two of that

legislation relate to the election of municipal clerks, whereas section three contains the retrospective validation of the bond issue, the bill impermissibly contains more than one subject matter and is therefore unconstitutional. However, we believe appellants give too restrictive a reading to the "one subject rule."

The aforementioned provisions of Am.Sub.H.B. No. 61 all generally relate to the topic of elections, be it for municipal clerk or passage of a bond issue. The election of a municipal clerk, or the passage of a bond issue, would be merely subcategories of this general topic and there is no constitutional prohibition against their inclusion in a single bill. Thus, we are not persuaded that there has been a "manifestly gross and fraudulent violation" of the one subject rule of the Ohio Constitution. For these reasons previously set forth, appellants remaining assignments of error are not well taken and the same are overruled.[7]

---

7. We are cognizant of the recent decision in *State ex rel. Hinkle v. Franklin Cty. Bd. of Elections* (1991), 62 Ohio St.3d 145, 148, 580 N.E.2d 767, 769, wherein the Supreme Court rejected an argument similar to the reasoning employed herein. Nevertheless, we are not persuaded that *Hinkle* is controlling in the cause *sub judice.* The determination of an enactment's constitutionality, under the one subject rule, is *sui generis* and "is dependent primarily, *if not exclusively,* on a case by case, semantic and contextual analysis." (Emphasis added.) *State ex rel. Dix v. Celeste* (1984), 11 Ohio St.3d 141, 145, 11 OBR 436, 439, 464 N.E.2d 153, 157. In conducting such an analysis of the provisions of Am.Sub.H.B. No. 61, and comparing it to the legislation at issue in *Hinkle,* it is obvious that there is a much greater relationship between the topics presented here than was present in *Hinkle.*

Most significantly, the portion of legislation deemed to be offending in *Hinkle* was an emergency provision set forth in sections seven and eight of Am.Sub.H.B. No. 200, which bore no relationship, whatsoever, to the remaining portions of that enactment. See Baldwin's 1991 Legislative Service at 5–321, 5–338. Rather, the offending emergency provision related solely to legislation previously enacted in Am.Sub.H.B. No. 405. See 143 Ohio Laws, Part III, 5012. The Supreme Court then held that such emergency provision in Am.Sub.H.B. No. 200 was unconstitutional. *Hinkle, supra,* 62 Ohio St.3d at 151, 580 N.E.2d at 771. Thus, while the court characterized the question in that case as whether there was a sufficient relationship between legislation on elective judicial offices and legislation on local option elections, the real issue presented was whether there was a sufficient relationship between the judiciary legislation and an emergency provision relating to a previous enactment. Although the court concluded that they were not related, the facts in *Hinkle* are clearly distinguishable from those in the cause *sub judice* where the two portions of Am.Sub.H.B. No. 61 directly reflect upon election matters.

Moreover, as was forewarned, the Supreme Court's decision precipitates confusion in an area of the law which once seemed relatively settled. See *Hinkle, supra,* at 153, 580 N.E.2d at 773 (Douglas, J., dissenting). For well over a century, our Supreme Court has stated that it presumed no violation of the one subject rule would ever occur and, in general, the only safeguard against it would be the General Assembly's regard for, and oath to support, the Ohio Constitution. *Dix, supra,* 11 Ohio St.3d at 145, 11 OBR at 439, 464 N.E.2d at 157; *Pim v. Nicholson* (1856), 6 Ohio St. 177, 180. Thus, we indulge every presumption in favor of the enactment's validity and need only satisfy ourselves that there is some "rational reason" for the inclusion of different topics within a single bill. *Hoover v. Bd. of Franklin Cty. Commrs.* (1985), 19 Ohio St.3d 1, 5, 19 OBR 1, 4, 482 N.E.2d 575, 578. It is unclear the extent to

Having considered all such errors assigned and argued herein, and finding them to be without merit, the judgment of the trial court is affirmed.

*Judgment affirmed.*

GREY and PETER B. ABELE, JJ., concur.

which the Supreme Court intends to modify, or overrule, the last one hundred years of jurisprudence in this area. But suffice it to say, *Hinkle* is distinguishable on its facts from the cause *sub judice* and we are not persuaded that Am.Sub.H.B. No. 61 manifests a gross or fraudulent violation of the one subject rule.