**In re Nick HAVIARAS and Mary Haviaras, Debtors.**

**Steven S. Davis, Chapter 7 Trustee, Plaintiff–Appellant,**

v.

**Ocwen Federal Savings Bank, FSB, et al., Defendants–Appellees.**

**No. 1:01CV0214.**

United States District Court, N.D. Ohio, Eastern Division.

Sept. 6, 2001.

## MEMORANDUM & ORDER

O'MALLEY, District Judge.

### I. Facts and Statement of the Case

Nick and Mary Haviaras purchased a home located at 10700 Ronald Drive in Parma, Ohio on July 14, 1990. They obtained a loan and executed a mortgage on the property in favor of Freedom Mortgage Corporation for $76,970 in principal on August 29, 1990. Freedom Mortgage Corp. then filed this mortgage with the Recorder of Cuyahoga County on August 30, 1990, and it was recorded in Mortgage Volume 90–5248, page 9, in the Cuyahoga County Recorder's Office. Through a series of assignments, Appellee Ocwen Federal Savings Bank, FSB ("Ocwen") now holds the mortgage.

On April 24, 1998, Ocwen commenced foreclosure proceedings against the Ha-

viarases[1] in the Cuyahoga County Court of Common Pleas. Ocwen then obtained a judgment decree on December 9, 1999. A sheriff's sale for this property was scheduled for February 22, 2000 at 10:00 a.m., but the sale was stayed by the Haviaras' filing of bankruptcy under Chapter 7 of the Bankruptcy Code earlier that day.

The Office of the United States Trustee appointed Appellant Steven S. Davis ("Trustee") to act as trustee in the Haviaras' bankruptcy case. Trustee filed this action in bankruptcy court to set aside Ocwen's mortgage, asserting that the mortgage was improperly executed because one of the attesting witnesses was not present when the mortgage was signed, and therefore the mortgage was avoidable under the "strong arm" powers of 11 U.S.C. § 544(a)(3).

The bankruptcy court granted Ocwen's motion for summary judgment, refusing to set aside the mortgage on two grounds: (1) that due to the pendency of a foreclosure action in state court at the time the underlying bankruptcy case was filed, the doctrine of *lis pendens* prevents Trustee from obtaining *bona fide* purchaser status; and (2) that Ohio Revised Code § 5301.234 applies to the proceeding because the bankruptcy case was filed after the statute became effective and therefore creates an irrebuttable presumption that the mortgage was properly executed. Trustee now appeals.

For the reasons stated below, this Court **AFFIRMS** the bankruptcy court's decision.

## II. Jurisdiction and Standard of Review

This matter is an appeal from a final order of the United States Bankruptcy Court for the Northern District of Ohio. Therefore, jurisdiction is proper in this Court under 28 U.S.C. § 158(a).

■ This Court reviews the bankruptcy court's grant of summary judgment under a *de novo* standard. *See Simon v. Chase Manhattan Bank (In re Zaptocky)*, 250 F.3d 1020, 1023 (6th Cir.2001). Summary judgment is appropriate if there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In this case, neither party disputes the material facts regarding the mortgage, so this Court must determine if summary judgment was appropriate as a matter of law.

## III. Discussion

■ The "strong arm" clause of the Bankruptcy Code allows a trustee to avoid transfers of property that would be avoidable by a hypothetical *bona fide* purchaser.

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—. . . (3) a bona fide purchaser of real property. . .from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544. Whether the trustee has actual knowledge of the mortgage is irrelevant. Since the property in question in

1. In addition to Nick and Mary Haviaras, the State of Ohio, Department of Taxation; American General Finance, Inc.; and Blue Sun Energy and Insulation were also parties to the foreclosure action.

this case is located in Ohio, the law of Ohio governs this inquiry. *See In re Zaptocky,* 250 F.3d at 1024.

For a mortgage to be properly executed in Ohio, (1) the mortgagor must sign the mortgage deed; (2) the mortgagor must acknowledge his signature before two attesting witnesses; and (3) the mortgagor's signature must be acknowledged or certified by a notary public of other designated individual. Ohio Rev.Code § 5301.01. Prior to the enactment of Ohio Rev.Code § 5301.234, a defect in any of the these elements rendered the mortgage execution invalid and therefore avoidable by a subsequent *bona fide* purchaser who has neither actual nor constructive knowledge of the prior mortgage. *See In re Zaptocky,* 250 F.3d at 1024.

Because a number of mortgages in Ohio involved situations where only one of the two named witnesses was actually present when the mortgagor affixed his signature to the mortgage, the Ohio General Assembly feared that many otherwise valid and enforceable mortgages could be avoided by bankruptcy trustees (or other third parties) on the basis of this technical defect in execution. In response to this concern, it enacted Ohio Rev.Code § 5301.234:

(A) Any recorded mortgage is irrebuttably presumed to be properly executed, regardless of any actual or alleged defect in the witnessing or acknowledgment on the mortgage, unless one of the following applies:

(1) The mortgagor, under oath, denies signing the mortgage.

(2) The mortgagor is not available, but there is other sworn evidence of fraud upon the mortgagor.

(B) Evidence of an actual or alleged defect in the witnessing or acknowledgment on the mortgage is not evidence of fraud upon the mortgagor and does not rebut the presumption

that a recorded mortgage is properly executed.

(C) The recording of a mortgage is constructive notice of the mortgage to all persons, including without limitation, a subsequent bona fide purchaser or any other subsequent holder of an interest in the property. An actual or alleged defect in the witnessing or acknowledgment on the recorded mortgage does not render the mortgage ineffective for purposes of constructive notice.

This statute irrebuttably presumes once a mortgage is recorded that, in the absence of actual fraud, the mortgage is validly executed and all persons, including *bona fide* purchasers, have constructive notice of its existence and validity. *See Helbling v. Williams (In re Williams),* 240 B.R. 884, 885 (Bankr.N.D.Ohio 1999). Ohio Rev. Code § 5301.234 became effective on June 30, 1999, after the date on which the Haviaras' mortgage was recorded, but prior to the initiation of the bankruptcy proceedings in this case.

The parties to this appeal differ as to whether Ohio Rev.Code § 5301.234 prevents Trustee from using his powers under 11 U.S.C. § 544 to set aside the mortgage held by Ocwen. Appellant Trustee contends that this statute may only be applied prospectively and that it, accordingly, only governs the validity of mortgages recorded after the effective date of the statute. Appellee–Ocwen, while acknowledging that the statute may only be applied prospectively, contends that prospective application of the statute includes application of its terms to all mortgages challenged in bankruptcies which are initiated after the act's effective date, even where the mortgage was actually recorded before passage of Ohio Rev.Code § 5301.234.

## A. Ohio Rev.Code § 5301.234 Applies to Bankruptcies Filed After the Effective Date of the Statute

■ While the Ohio General Assembly used Ohio Rev.Code § 5301.234 to address the perceived threat that bankruptcy trustees, among others, might seek to avoid otherwise wholly valid mortgages by invoking defects in their execution, the General Assembly did not explain in precise terms *which* mortgages it intended to immunize from such attacks. Because the Court finds that the language of the statute is capable of more than one meaning, the Court turns to the statutory construction aids contained in the Revised Code for guidance. *See In re Adoption of Baby Boy Brooks*, 136 Ohio App.3d 824, 829, 737 N.E.2d 1062, 1065 (Ohio Ct.App.2000).

■ When confronted with an ambiguity in a statute, Ohio Revised Code § 1.49 directs a court to consider and attempt to carry out the intention of the legislature and sets forth a number of factors that it may consider when doing this:

(A) The object sought to be attained;

(B) The circumstances under which the statute was enacted;

(C) The legislative history;

(D) The common law or former statutory provisions; including laws upon the same or similar subjects;

(E) The consequences of a particular construction;

(F) The administrative construction of the statute.

The "paramount concern," however, remains the intent of the General Assembly when it enacted the statute. *See State ex rel. Cincinnati Post v. Cincinnati*, 76 Ohio St.3d 540, 543, 668 N.E.2d 903, 906 (Ohio 1996).

Upon consideration of the act and its purpose, the Court agrees with the bankruptcy court below that Ohio Rev.Code § 5301.234 prevents a bankruptcy trustee in a bankruptcy action filed *after* the effective date of the statute from using his avoiding powers to set aside a previously recorded mortgage, regardless of when the recording occurred. *See Logan v. Citifinancial, Inc. (In re Stewart)* 256 B.R. 259 (Bankr.S.D.Ohio 2000) (reaching the same conclusion).

The Ohio General Assembly intended to prevent exactly the situation at issue here—a bankruptcy trustee seeking to avoid an otherwise valid mortgage based upon a technical defect with an attesting witness. Since the vast number of recorded mortgages were recorded prior to the effective date of this statute, the corrective measure employed by the General Assembly in Ohio Rev.Code § 5301.234 would have little immediate effect if this statute only applied to mortgages recorded after the effective date. Limiting the application of this statute to those mortgages would hinder the General Assembly's effort to address this issue in a timely manner. On the other hand, applying the statute all to bankruptcies filed after the effective date of the statute comports with the circumstances under which the statute was enacted and gives immediate effect to the goal the General Assembly sought to achieve.

This reading of § 5301.234, moreover, ensures a more logical and more consistent approach to mortgage challenges, both by the courts and by would-be bone-fide purchasers. If a mortgage is executed and recorded as of the date of a challenge to its validity by one alleging a newly interest in the property (e.g., a bankruptcy trustee or other purchaser), the mortgage is entitled to the benefit of the presumption to § 5301.234. If it is not recorded as of the challenge date, it is not given the benefit of that presumption. Trustees in bankruptcy and other putative bone-fide purchasers

would have a clear measure of a mortgage's vulnerability to challenge and courts would have a bright-line test to apply is assessing any such challenge. Under this reading of the Act, where a purchaser is on notice of a mortgage by virtue of its public recording, technical grounds for challenging the validity of the mortgage (or at least those premised on attestation) are unavailable.

## B. Application of Ohio Rev.Code § 5301.234 to Bankruptcy Proceedings Filed After Its Effective Date Is Not a "Retroactive" Application of the Act

In Ohio, statutes are not to be applied retroactively unless the General Assembly expressly declares that they should be so applied and this declaration is constitutional. See Ohio Rev.Code § 1.48 ("A statute is presumed to be prospective in its operation unless expressly made retrospective."); Schulte v. Schulte, 71 Ohio St.3d 41, 44, 641 N.E.2d 719, 722 (1994); Helbling v. Ducksworth (In re Ducksworth), 1999 WL 970273, at *2 (Bankr. N.D.Ohio 1999). The Ohio Supreme Court uses a two-prong test to determine whether a statute is unconstitutionally retroactive. See Bielat v. Bielat, 87 Ohio St.3d 350, 353, 721 N.E.2d 28, 32 (Ohio 2000). The Court must first look to the legislation itself to see if the General Assembly expressly indicated that the statute was to be given retroactive effect. If a statute contains an express declaration of retroact then this Court must determine if the statute affects a substantive right or is, instead, merely remedial. Remedial statutes may be applied retroactively without violating Article II, Section 28 the Ohio Constitution, while substantive statutes may not. Since Ohio Rev.Code § 5301.234 does not expressly state that it should be applied retroactively, this Court presumes

it is to be applied prospectively and need not reach the second prong of this inquiry.

Finding that Ohio Rev.Code § 5301.234 must be applied prospectively does not, however, render this Court's reading of the act unconstitutional. The question still remains as to what exactly constitutes a prospective, as opposed to retroactive, application of § 5301.234.

Since § 5301.234 remains in its nascent stages, little case law exists on it, especially in situations where the effective date of the statute falls between the recording of the mortgage and the filing for bankruptcy. See In re Stewart, 256 B.R. at 259 (mortgage recorded before, but bankruptcy proceedings initiated after; statute applies); In re Zaptocky, 250 F.3d at 1028 n. 5 (both mortgage recorded and bankruptcy proceedings initiated before effective date; statute does not apply). Logan v. U.C. Lending, Inc. (In re Caldwell), 257 B.R. 241 (Bankr.S.D.Ohio 2000) (same) In re Williams, 240 B.R. at 885 (same); In re Ducksworth, 1999 WL 970273, at *2 (mortgage recorded before, but silent as to when the bankruptcy proceedings were initiated; statute does not apply). While the court in In re Stewart found, as this Court does, that Ohio Rev.Code § 5301.234 should be applied in all bankruptcy proceedings filed after the effective date of the statute, the court did not consider whether its interpretation violated the anti-retroactivity clause of the Ohio Constitution. Because the other cases cited dealt with situations where the bankruptcy proceedings were filed prior to the effective date of the statute, moreover, those courts also did not address precisely the issue before this Court. Thus, this Court must take a fresh look at this issue.

When analyzing whether a particular interpretation of Ohio law renders that law unconstitutionally retroactive, the focus must be on whether application of

the law results in the "impairment or deprivation of rights, the creation of new obligations, or the attachment of new disabilities." *Bielat,* 87 Ohio St.3d at 360, 721 N.E.2d at 38. Justice Story's seminal test still serves as a guide in this inquiry: an unconstitutionally retroactive law "takes away or impairs vested rights, acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past." *Id.,* 87 Ohio St.3d at 361 n. 2, 721 N.E.2d at 38 n. 2 (quoting *Soc. for the Propagation of the Gospel v. Wheeler,* (C.C.D.N.H. 1814), 22 F.Cas. 756, 757). It is in this light that the prospective application of Ohio Rev.Code § 5301.234 to those seeking *bona fide* purchaser status after the effective date of the statute must be considered.

"A 'vested right' may be created by common law or statute and is generally understood to be the power to lawfully do certain actions or possess certain things; in essence, it is a property right." *Washington Cty. Taxpayers Assoc. v. Peppel,* 78 Ohio App.3d 146, 155, 604 N.E.2d 181, 187 (Ohio Ct.App.1992). A trustee's avoiding powers as a *bona fide* purchaser only arise once the debtor files a bankruptcy petition; prior to the filing of a petition, the trustee has no rights in the debtor's property. Thus, the trustee's rights as a *bona fide* purchaser cannot vest within the meaning of any retroactivity analysis until the filing of bankruptcy. Application of Ohio Rev. Code § 5301.234 to all bankruptcies filed after the effective date of the statute therefore would not take away or impair any vested rights of the trustee in the mortgaged property since the rights arose after the effective date of the act.

Since the trustee steps into the shoes of a hypothetical *bona fide* purchaser, it is from the viewpoint of this hypothetical individual that the statute should be construed. The transaction or consideration at issue in these circumstances would not be the contract between the mortgagor and mortgage, but instead would be the transaction or consideration given by this hypothetical subsequent purchaser to acquire the mortgagor's property. In this case, since the property would be hypothetically acquired *after* the effective date of the statute, the statute would not affect a transaction or consideration already past and thus would not run afoul of the ban on retroactive legislation.

Since neither a trustee's vested rights nor past transactions or occurrences are affected by this interpretation of the statute, application of Ohio Rev.Code § 5301.234 to bankruptcies filed after the effective date of the statute does not violate Ohio's prohibition on retroactive legislation.[2]

## C. Appellant Waived All Other Constitutional Challenges to Ohio Rev. Code § 5301.234 by Failing to First Raise Them in the Bankruptcy Court

For the first time, Appellant challenges the constitutionality of Ohio Rev.Code § 5301.234 under Article IV, Section 5(B) of the Ohio Constitution; Article II, Section 15(D) of the Ohio Constitution; and the Fifth and Fourteenth Amendments to the United States Constitution. While the Court acknowledges that Appellant's arguments regarding the constitutionality of this statute are not frivolous, *See Wasserman v. Household Realty Corp. (In re*

---

**2.** Construing § 5301.234 in this manner does not affect the interest of a *bona fide* purchaser who acquired his interest prior to the effective date of this statute, because, prior to the stat- ute, the recording of a defective mortgage would not have served as constructive notice of the validity of that mortgage.

**800**

*Barkley),* 263 B.R. 553 (Bankr.N.D.Ohio 2001) (holding Ohio Rev.Code § 5301.234 unconstitutional under Ohio's single-subject rule), Appellant has waived these issues by failing to raise them first in the bankruptcy court.

■■■■ As a general rule, issues not first litigated in the trial court are inappropriate for consideration on appeal. *See Friendly Farms v. Reliance Ins. Co.,* 79 F.3d 541 (6th .Cir.1996). This also holds true for arguments not first presented to a bankruptcy court. *See Koenig Sporting Goods, Inc. v. Morse Road Co. (In re Koenig Sporting Goods, Inc.),* 229 B.R. 388, 389 n. 1 (6th Cir. BAP 1999). The Court does have discretion, however, to still hear issues not raised in the bankruptcy court in limited circumstances. In deciding whether to exercise this discretion, the Court looks to four factors:

> 1) whether the issue newly raised on appeal is a question of law, or whether it requires or necessitates a determination of facts; 2) whether the proper resolution of the new issue is clear and beyond doubt; 3) whether failure to take up the issue for the first time on appeal will result in a miscarriage of justice or a denial of substantial justice; and 4) the parties' right under our judicial system to have the issues in their suit considered by both a district judge and an appellate court.

*Friendly Farms,* 79 F.3d at 545. Even if these factors are not present, the Court can still review an issue not presented below in "exceptional" circumstances. *Id.*

On balance, this Court concludes that these factors do not weigh in favor of reviewing the constitutionality of this statute and that there are no "exceptional" circumstances warranting such review. While the constitutional issues raised are matters of law, the resolution of these issues is not clear and beyond a doubt;

indeed, they are complex and subject to substantial debate. Further, Appellant had the opportunity to raise these issues in the bankruptcy court, but failed to do so. Nothing in the record indicates that a substantial miscarriage of justice would result if this Court does not address Appellant's constitutional arguments at this late stage of the proceedings. As a result, this Court declines to do so.

## IV. Conclusion

Fore the reasons described, this Court **AFFIRMS** the bankruptcy court's grant of summary judgment in favor of Appellee–Ocwen. Because this determination is sufficient to resolve this appeal, the Court finds it unnecessary to decide whether the doctrines of *res judicata* or *lis pendens* also prevent Trustee from setting aside the mortgage held by Ocwen.

**IT IS SO ORDERED.**